SCHOOL DISTRICT No. 61, Respondent, *v.* ALDERSON, Appellant.

**1. Corporations — Existence — Estoppel.**

One having contracted with a corporation as such will not be permitted in an action on the contract to question its corporate existence.

**2. Contract — Validity—Compounding Felony—Nature of Proof.**

Where it is sought by parol to invalidate a written agreement on the ground of its having been made to compound a felony, such fact must be established with clearness and certainty. Its existence should be free from doubt. Mere threats of prosecution, whatever may have been their effect, are not sufficient so long as they were not coupled with expressions that would naturally lead the party to infer that if the contract was entered into no prosecution would follow.

**3. Same — Sufficiency of Proof— Question of Law.**

In such a case, where it appeared there was a deficit in the accounts of

a school-district treasurer, and there had been a contention between him and his successor with reference to it, and the latter stated he would settle the matter and stop the prosecution if the defaulting treasurer would pay a certain amount and give a note (the one in suit) signed by A., who testified he would not have signed the note if it had not been agreed to stop the prosecution, but it did not appear a criminal prosecution was referred to, or that one of any kind was pending; nor did it clearly appear what the terms of the agreement were; nor was it shown that the school district authorized the alleged unlawful agreement to be made, or that it had any knowledge thereof after accepting the note.   *Held,* a verdict was properly directed in favor of the district in an action on the note.·

(Argued May 18, 1888; affirmed May 25; opinion filed February 9, 1889.)

APPEAL from the district court, Minnehaha county; Hon. C S. PALMER, Judge.

*H. H. Keith,* for appellant.

The court was not justified in directing the jury to find for the plaintiff.

The testimony given clearly shows that the defendant· Collins, while acting as treasurer of plaintiff, embezzled about $800 of its money, and the plaintiff, by its officers, threatened to arrest and prosecute him criminally therefor, and that the note in suit was signed by the defendant Alderson solely upon the agreement of the plaintiff and its officers that they would not prosecute Collins for the offense with which they charged him.

Any contract or agreement contemplating the discontinuance of a prosecution of one charged with the commission of a crime, or a forbearance to prosecute one for the same, is void.   Greenh. Pub. Pol. 451–457 ; 2 Rand. Com. Paper, §§ 501, 502 ; Bish. Cont., §§ 491–494 ; Baker v. Farris, 61 Mo. 389 ; McMahon v. Smith, 47 Conn. 221 ; National Bank v. Kirk, 90 Pa. St. 49 ; Riddle v. Hall, 99 id. 116 ; Crowder v. Reed, 80 Ind. 1 ; Averbeck v. Hall, 14 Bush, 505 ; Peed v. McKee, 42 Ia. 689 ; Porter v. Havens, 37 Barb. 343 ; Conderman v. Trenchard, 58 id. 165 ; Snyder v. Willey, 33 Mich. 484 ; Wisner v. Bardwell, 38 id. 278; Buck v. First National Bank, 27 id. 293 ; Bell v. Administrators, 1 Bay (S. C.), 249 ; Hinesborough v. Summer, 9 Vt. 23; Laing v. McCall, 50 id. 657; Hinds v. Chamberlain, 6 N. H. 225 ; Clark v. Ricker, 14 id. 44 ; Henderson v. Palmer, 71 Ill. 579 ; Fernekes

v. Bergenthal, 34 N. W. Rep. 238; Godwin v. Crowell, 56 Ga. 566; Haynes v. Rudd, 102 N. Y. 72, 7 N. E. Rep. 287.

It makes no difference that criminal proceedings had not been instituted at the time the note was given. Roll v. Raguet, 4 Ohio St. 400; Gardner v. Maxey, 9 B. Mon. 90; Von Windisch v. Klaus, 46 Conn. 433; Taylor v. Jaques, 106 Mass. 291; Baker v. Farris, 61 Mo. 389; Crowder v. Reed, 80 Ind. 1; National Bank v. Kirk, 90 Pa. St. 49.

Notwithstanding the note in suit was given for a portion of the money embezzled, still the defendant Alderson is not estopped from averring and proving that there was also a further consideration which was illegal and against public policy. 2 Rand. Com. Paper, § 502; Sumner v. Summers, 54 Mo. 340; Baker v. Farris, 61 id. 389; Van Windisch v. Klaus, 46 Conn. 433; McMahon v. Smith, 47 id. 221; Riddle v. Hall, 99 Pa. St. 116; Taylor v. Jaques, 106 Mass. 291; Peed v. McKee, 42 Ia. 689; Bowen v. Buck, 28 Vt. 308; Conderman v Trenchard, 58 Barb. 165; Crowder v. Reed, 80 Ind. 1.

A part of the consideration being illegal renders the note void. 1 Pars. Cont. 456; Bish. Cont., § 487; Haynes v. Rudd, 103 N. Y. 272, 7 N. E. Rep. 287; Hinds v. Chamberlain, 6 N. H. 225; Wisner v. Bardwell, 38 Mich. 278; Snyder v. Willey, 33 id. 483; Averbeck v. Hall, 14 Bush, 505.

It is not necessary in order to render the note invalid that there should be an express agreement to compound a crime. It is enough that it is understood that the accused is to derive some immunity from criminal responsibility, or some advantage in that regard, by the contract being made. Greenh. Pub. Pol. 453, 454; Conderman v. Trenchard, 53 Barb. 165; Porter v. Havens, 37 id. 343; Laing v. McCall, 50 Vt. 657; Riddle v. Hall, 99 Pa. St. 116; Sumner v. Summers, 54 Mo. 345.

Nor is it necessary that the promise to forbear from instituting criminal proceedings should have been made at the precise time the note was executed. It is enough if it appears that such promise was made at that time, or prior thereto, and that all parties acted in view of that promise, or that it was the inducement which operated upon the mind of the obligors. Kimbrough v. Lane, 11 Bush, 556.

The court should have directed a verdict for the defendant Alderson.

It was incumbent upon plaintiff to prove it was a corporation. There was no proof on that point.

*Wilkes & Wells*, for respondent.

The facts are not as contended. The consideration was the debt due from Collins to the district. The note was, therefore, valid. 1 Daniel, Neg. Inst. 198 ; Bibb v. Hitchcock, 20 Am. Rep. 288.

The plaintiff is a public corporation and has but few of the characteristics of private corporations. It is a mere agent of the territory for educational purposes. School District v. Fuess, 98 Pa. St. 600, 42 Am. Rep. 629 ; Dill. Mun. Corp., § 24 ; Sanborn v. School District, 12 Minn. 33 (Gil. 1) ; Beach v. Leahy, 11 Kan. 23 ; Commissioners v. Mighles, 7 Ohio St. 110.

This class of corporations is not subject to an indictment for such an offense as is alleged was committed. A corporation is incapable of committing a felony. 1 Whart. Cr. L., § 91 ; 1 Bish. Cr. Law, §§ 85–90.

That the court was right in directing the verdict, see Greenh. Pub. Pol. 458 ; Armstrong v. Express Co., 4 Baxter, 376 ; Swope v. Fire Ins. Co., 93 Pa. St. 251 ; Fulton v. Hood, 34 id. 365 ; Ward v. Allen, 2 Metc. 53 ; Marbury v. Brooks, 7 Wheat. 556 ; Hatch v. Collins, 34 Hun, 315.

Threats of unauthorized persons, whether officers of the respondent or not, cannot be considered as binding upon the district. Swope v. Jefferson Ins. Co., 93 Pa. St. 253 ; Fulton v. Hood, 34 id. 365. See, also, Hatch v. Collins, 14 Hun, 314 ; Bibb v. Hitchcock, 20 Am. Rep. 288 ; Catlin v. Henton, 9 Wis. 442 ; 2 Randolph, Commercial Paper, 85 ; Goodwin v. Crowell, 56 Ga. 566 ; Deere v. Wolfe, 21 N. W. Rep. 168 ; Plank v. Gunn, 2 Wood, 372 ; Taylor v. Cottrell, 16 Ill. 93.

The incorporation of respondent could not be inquired into collaterally in this suit. Dak. C. C., § 376 ; Eaton v. Aspinwall, 19 N. Y. 119 ; M. E. Church v. Pickett, id. 486 ; Stuart v. School District, 30 Mich. 69 ; 91 Ill. 179 ; Big. Estop. 527, 528 ; Whitford v. Laidler, 94 N. Y. 151 ; Swales v. State, 4 Ind. 516.

TRIPP, C. J.    This is an action upon a promissory note made to the plaintiff by the defendants, Collins and Alderson, for the sum of $150 and interest.    The defendant Collins makes default. The defendant Alderson appears and answers, setting up three defenses:    (1) He pleads a general denial.    (2) He denies specially the incorporation of plaintiff.    (3) He alleges that Collins, his co-defendant, was, during the years 1882, 1883, 1884, 1885, and a part of 1886, treasurer of plaintiff school district, and that as such treasurer he appropriated to his own use of the moneys of said district a sum exceeding $800, and that the note in controversy was given in consideration of the agreement, on the part of the district and its officers, that they and all other persons should desist and refrain from prosecuting and punishing said Collins for the crime of embezzlement, and for no other and different consideration whatsoever.

At the close of the evidence on the part of the plaintiff and defendant, the court, on motion of plaintiff, directed a verdict in its favor for the amount of the note, and interest, to which the defendant Alderson duly excepted, and brings the case here for review upon the evidence.

Did the court err in directing a verdict for the plaintiff?    The defendant rests his claim to have the case reversed upon two grounds :    (1) That there was no evidence of plaintiff's incorporation ; (2) that there was sufficient evidence of the illegal agreement entering into the consideration of the note to allow the case to be submitted to the jury.

We shall not stop to consider the first point made by appellant at length, as it was not seriously urged at the argument.    Parties in private suits are not permitted to attack the incorporation of one with whom they have dealt in this collateral way.    Eaton v. Aspinwall, 19 N. Y. 119 ; Methodist Episcopal Church v. Pickett, id. 482; Stuart v. School Dist., 30 Mich. 69.    But, having contracted with plaintiff as an incorporation, he is estopped to deny its capacity to so contract.    Whitford v. Laidler, 94 N. Y. 151; Cowell v. Springs Co., 100 U. S. 55.

Was the note void as against public policy?

Section 184, Pen. Code, reads as follows : " Every person who, having knowledge of the actual commission of a crime or viola-

tion of statute, takes any money or property of another, or any gratuity or reward, or any engagement or promise therefor, upon any agreement or understanding, express or implied, to compound or conceal such crime, or violation of statute, or to abstain from any prosecution therefor, or to withhold any evidence thereof, is punishable," etc.   And a similar provision is contained in the Code of Criminal Procedure, § 235 :   " A person may be indicted for having, with the knowledge of the commission of a public offense, taken money or property of another, or a gratuity or reward, or an engagement or promise therefor, upon the agreement or understanding, express or implied, to compound or conceal the offense, or to abstain from a prosecution therefor, or to withhold any evidence thereof, though the person guilty of the original offense has not been indicted or tried."   Certain misdemeanors may be compromised by consent of the injured party upon order of the court (§§ 524, 525, Code Crim. Proc.), but, except as therein provided, any agreement to conceal or compound an offense is a crime made punishable by fine or imprisonment, or both.  And by section 953 of our Civil Code it is provided :   A contract " is not lawful which is (1) contrary to an express provision of law ; (2) contrary to the policy of express law, though not expressly prohibited ; or (3) otherwise contrary to good morals."   So that any contract or agreement, express or implied, to knowingly conceal or compound an offense, to abstain from prosecuting therefor, or to withhold any evidence thereof, is made unlawful by the express provision of our law.

A. G. Brown, the treasurer of plaintiff district, and successor of defendant Collins, was examined as a witness on the part of the defendant.   There were also examined on the part of the defendant, George H. Brace, a banker, J. E. Colton, county superintendent of schools, and the defendant Alderson in his own behalf. The co-defendant, Collins, was not produced as a witness, nor were the other officers of the district, except the director Lowell, whose evidence was not abstracted by appellant.   It appears from the abstract that the plaintiff school district, No. 61, was organized under the old school law of 1877 ; that the term of office of the defendant Collins expired in June, 1886 ; that upon the qualification of his successor it was discovered that Collins was behind in his

accounts. It does not clearly appear what was the amount of the deficit, but in the negotiations of settlement it was claimed to be in the neighborhood of $800.

There was much contention, it seems, between Brown, the new treasurer, and Collins and his friends, as to the immediate settlement of this alleged shortage. Collins was behind. After several weeks of negotiation the difference was finally adjusted by allowing Collins to make payment to the district of $200 cash, and to give his note, signed by Alderson, for $150, the balance agreed upon between the parties. The note so given is the note in controversy.

We have examined this evidence with care, and are unable to extract from it any thing that could be construed into a contract or agreement on the part of plaintiff district, or any one pretending to represent it, that "it would desist or refrain from prosecuting the defendant Collins for the crime of embezzlement," or that "the note was given," in whole or in part, "to compound or settle" such crime, as alleged in the answer. The defendant Alderson testifies to some threats on the part of the treasurer, Brown, and there are vague statements running through the testimony of the witnesses that Brown said he would "stop the prosecution," and "would not prosecute him further," if Alderson would sign the note ; and Alderson himself says, "I would not have signed it, [the note,] if he had not agreed to stop the prosecution ; " but there is no statement any where by any of the witnesses that the "prosecution" referred to by the witnesses was a criminal prosecution, nor does it distinctly appear from the evidence what the terms of the agreement were, if such agreement was made. Mr. Brace, who makes many vague, indefinite references to the "threatened prosecution," and the "understanding" that "the prosecution would be stopped" if the note was given, when asked the direct question, "Was there any thing said by Mr. Brown in relation to the district prosecuting or not prosecuting Mr. Collins if this note was not given ?" answered : "Mr. Brown stated that if he could get this settlement, they would settle all they claimed the district had against Mr. Collins, by the giving of this note and the money they received. They would settle the civil process of the district against Mr. Collins. The district never afterward proceeded

against Mr. Collins criminally, to my knowledge." Mr. Colton testifies to some " understanding " he had that the district officers were to take the money and note, and " leave matters just as they were; just stop further proceedings ; " but he was not present at the settlement, and he testifies that " the most he knew was told him by the officers and those directly interested." Mr. Brown, the treasurer, and Mr. Lowell, the director, were both produced as witnesses, and not only denied that any agreement was made not to prosecute, but denied that any threats of prosecution were made.

In defenses of this kind, where it is sought to invalidate a written contract by parol evidence, it should be made to clearly appear that the agreement was in contravention of public policy. Vague and indefinite statements are not sufficient. The understanding or agreement relied on must be positive and certain ; entered into and relied upon by both parties. Says Judge CALD-WELL in Swann v. Swann, 21 Fed. Rep. 299 : " No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its en-forcement would be in violation of the settled public policy of this state, or injurious to the morals of its people. Vague surmises and flippant assertions as to what is the public policy of the state, or what would be shocking to the moral sense of its people, are not to be indulged in." Says the Lord Chief Justice in Walsh v. Fussell, 6 Bing. 163 : " To hold a contract void on the ground of its impolicy or inconvenience, we ought to be clearly satisfied that the performance of it would be necessarily attended with injury or inconvenience to the public." In Malli v. Willett, 57 Ia. 705, 11 N. W. Rep. 661, one witness, being asked what the consideration was, said that A. wanted to " prosecute " B. for adultery with his wife, and the note " was executed so as not to have any fuss with him about it,— to settle up that matter." The court held that the design to compound a criminal prosecution did not clearly appear; and that a verdict should have been for the plaintiffs. Says Chit. Cont. 664 : " An agreement is not void on this ground, unless it expressly and unquestionably contravenes public policy, and be manifestly injurious to the interest of the state." Iowa likens it to declaring a law unconstitu-

tional and void. Says Judge COLE in Richmond v. Railway Co., 26 Ia. 202: "The power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power; and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." In Kellogg v. Larkin, 3 Pin. 123, the court says: "Before a court should determine a contract which has been entered into in good faith, stipulating for nothing that is *malum in se,* * * * to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical. He is the safest magistrate who is more watchful over the rights of the individual than over the convenience of the public, as that is the best government which guards more vigilantly the freedom of the subject than the rights of the state."

The ambiguous and indefinite expressions in the testimony of the defendant Alderson as to "stopping the prosecution," etc., could not be permitted to go to the jury as evidence of an agree-. ment to compound a felony. No "prosecution" of any kind had been commenced; and the word might have been understood and intended as applying to civil proceedings; and would be so construed by the court in absence of any evidence as to what was meant. It is very evident that some kind of proceeding would have been commenced if settlement had not been had; and if the statements of witnesses as to what was said are susceptible of any other construction than that which would make the contract void as against public policy it would be the duty of the court to adopt that construction. It is immaterial what may have been the, expectations on the part of Collins when he gave this note, even if he expected it would prevent any criminal prosecution, so that there was no agreement, express or implied, on the part of the plaintiff to that effect. It is the promise or agreement to conceal or not to prosecute that invalidates and makes void the contract; and the mere fact that the contract "was made with the expectation that the prosecution would be dropped, does not take the case out of the rule." Armstrong v. Express Co., 4 Baxt. 376; Hoover v. Wood, McCahon, 509; Hatch v. Collins, 34 Hun, 314; Marbury v. Brooks, 7 Wheat. 556. Nor are threats of prosecu-

tion sufficient to avoid securities given in consequence thereof on the ground of being against public policy. The threats may be of such character as to avoid the contract as made *per minas*, but mere threats are not sufficient to avoid the contract on grounds of public policy, however violent they may be, or however much effect they may have upon the contracting party, so that they are not coupled with such words of expression as will naturally lead the party to infer that if the contract be made no prosecution will follow. In Swope v. Insurance Co., 93 Pa. St. 251, the father had given his note and mortgage to secure certain sums of money alleged to have been embezzled by his son from the insurance company; and at the trial on foreclosure of the mortgage the father offered to prove that he at first declined to accede to the demand of the insurance company; that Coleman, agent of the company, exhibited a paper to him containing a statement of the sums alleged to have been embezzled, and said to him: " This is now $1,300 that Albert has stolen, and I want to see if you are going to fix it up; " that he replied: " I am unable. I have no money, and cannot raise any; " that Coleman said: " Mortgage your property, and I'll have it taken by the company; and if you do not, we will have Albert arrested for his stealing, and put him in the penitentiary; " and that Coleman again said " that this stealing of Albert's had to be made up to the company, and if he did not come down immediately and give the mortgage spoken of, the company would at once arrest Albert, and put him in the penitentiary." The offer was rejected, and the verdict of the jury was directed for the insurance company. In reviewing the action of the lower court in directing the verdict, the supreme court says: " The offers were to prove threats of prosecution if the security was not given, and it is claimed that the jury might have inferred from this that if the mortgage was given the agreement was that no prosecution would ensue. But this would be unwarranted." The case is stronger than the one at bar. The threats were positive and continuous, and the inference is strong, from the language used, that if the security asked were given, no prosecution would follow; yet the court held that it was not, within the rule of contracts, void as against public policy. In Catlin v. Henton, 9 Wis. 477, the father had given a note and mortgage for certain sums

alleged to have been stolen by his son from the money-drawer of his employer; and both the father and son testified at the trial "that the mortgage was executed on the demand of Lyman by David P. Mapes, the father of Timothy, to avoid such criminal prosecution, and under an agreement with Lyman that, if it was given, the prosecution should be hushed up." But the court sustained the contract, and the supreme court, in sustaining the findings of the lower court, says of this defense: " True, it is supported by the two Mapes, but the testimony of Lyman and the other witnesses quite overbalances theirs, and satisfies us that the note and mortgage were executed by them to secure an amount which they knew and felt that Timothy ought to pay." In Massachusetts it is held that where the illegal promise is made, not from motives of gain, but from sympathy and compassion the contract is valid. Com. v. Pease, 16 Mass. 94; Ward v. Allen, 2 Metc. 53.

These cases illustrate how strictly the rule is held to agreements to conceal crime and prevent public prosecution. It is true that where, in the greed for gain, the party agrees, as a part of the consideration of the contract, to suppress public prosecution of crime, the entire contract is as much tainted, and is equally vitiated, as against public policy, as though such corrupt agreement formed the sole consideration of the offense. § 909, Civil Code; Haynes v. Rudd, 102 N. Y. 372, 7 N. E. Rep. 287; Wisner v. Bardwell, 38 Mich. 278. But it must clearly appear, where other considerations apparently or necessarily enter into the contract, that the contract was in part based upon the illegal consideration; and it is incumbent upon the party who alleges such illegal consideration to prove it. The burden is upon him to overcome all fair presumptions arising from the evidence in favor of the legality of the contract.

There is another question involved in this case that cannot be overlooked by the court in determining the validity of this contract, and the correctness of the ruling of the court in directing the verdict of the jury. The plaintiff is a school district. It was one of the contracting parties, and the party who is charged with an act which, if done by an individual, would subject him to fine and imprisonment. It is nowhere claimed that the corrupt agreement was made with the plaintiff acting in its collective ca-

pacity when assembled in district meeting. It is not claimed that it was made by its school board when assembled in regular session, but it is claimed to have been made by the succeeding treasurer with an ex-treasurer of the district.

A school district is at most an involuntary *quasi* corporation. It has no voice in its own creation. It is called into being and struck out of existence at the will and dictation of the county superintendent and the county board. Its directors and agents have the honors of office thrust upon them without solicitation, and without compensation. These school districts are mere subdivisions of the county, temporarily segregated and set apart with certain powers, only expressly granted by crude statutes subject to ever-varying modifications and amendments by hasty and inconsistent legislation. Judge BELL, in Harris v. School Dist., 8 Fost. (N. H.) 58, well expresses it when he says : " These little corporations have sprung into existence within a few years, * * * and their corporate powers and those of their officers are to be settled by the constructions of the courts upon a succession of crude, unconnected and often experimental enactments." Such corporations have no powers derived from usage. They have the powers only expressly granted to them, and such as are necessarily implied from the powers granted to enable them to perform the duties imposed by law, and no more. Most of the powers allowed to be exercised by the school districts are conferred upon the voters assembled in district meeting. Other minor powers are conferred upon the school board, consisting of a director, treasurer and clerk, and certain enumerated ministerial duties are required to be performed by the officers individually ; but by no provision of the statute is the treasurer authorized to compromise and settle claims against the district nor *a fortiori* to enter into contracts in violation of law. If the treasurer of the plaintiff school district was authorized to settle and compromise the claim against the outgoing treasurer by express authority given or by ratification of his acts, it would not be liable for his willful torts committed in excess of his authority, and done without its knowledge or consent. The agent of a private person or private corporation may bind his principal by his own wrongful acts done in the course of and within the scope of his employment; but the rule is relaxed in case of

public corporations.    Says the court in School Dist. v. Fuess, 98 Pa. St. 600 : " A less stringent rule applies to public corporations, and least stringent of all should be applied to school districts whose officers have limited and defined powers in a system exclusively for the free education of the children in the commonwealth.    The directors as a board must exercise their powers.    The board may make contracts.    *    *    *    One or more of the directors, without authority from the board, can make no contract binding upon the district,— cannot change a contract,— can do no act fixing the district for a liability."    See, also, Sandborn v. School District, 12 Minn. 33 (Gil. 1) ; Beach v. Leahy, 11 Kan. 23 ; Commissioners v. Mighels, 7 Ohio St. 110.

The rule in case of individuals and private corporations, however, extends no further than to wrongs committed in the course and within the scope of employment ; it does not extend to fraud and willful torts, committed by the agent outside of and not within the scope of his employment.    There was no evidence in this case that the treasurer had ever been authorized to compromise or settle this claim by the district.    On the contrary, it does appear from the defendant's own testimony that nothing was done by the district in reference to this matter, though they had several meetings during that time.    The most that appears in the evidence of any action on the part of the district appears in the defendant's reply to the question of the court : " *Question.* Did you ask them to come to a meeting when you went around to see them ? *Answer.* Well, I asked them to get together, sir ; to see what they would do.    There was nothing done definite about that proposition at all."    If the district was ever bound by the treasurer's action, it was by receiving the fruits of his settlement, to-wit, the note, and thereby ratifying his unlawful contract not to prosecute; but in such case it is necessary, in order to bind private individuals even by ratification, that they have knowledge of the wrong committed by their agents.    Our statute provides (§ 1349, Civil Code): " A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or, where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."    And this court, in Nichols v. Bruns, 5 Dak. 28, 37 N. W. Rep. 752 (May

Term, 1887), held that a principal was not liable for the fraudulent representations of his agent on the ground of ratification where he received the fruits of the contract without knowledge of any wrong committed. If such be the rule in case of an individual or private corporation, so much the more ought a school district not to be liable for an act of its officer, done without its authority, and ratified only so far as to receive and adopt the results of his acts, but without knowledge that in doing the act ratified he had exceeded his authority, or agreed to do what was forbidden by law.

These *quasi* public corporations are not liable for the neglect or wrongful acts of their officers, unless such liability arises out of some special provision of statute. Cities are held liable for negligence in case of their streets, etc., by virtue of the special charters creating them; but this rule is held not to extend to counties, towns, and similar *quasi* corporations. See authorities cited by 2 Dill. Mun. Corp., § 963 ; Hill v. Boston, 122 Mass. 344. Private corporations have been held for libel when they have authorized reports of their officers, reflecting upon the business and standing of rival companies. Whitfield v. Railroad Co., El., Bl. & El. 115 ; Railroad Co. v. Quigley, 21 How. 202 ; Maynard v. Insurance Co., 34 Cal. 48 ; Aldrich v. Printing Co., 9 Minn. 133 (Gil. 123). " But," says Judge COOLEY, commenting on these cases, "if, on the other hand, some servant of the corporation, who supposed he might advance its interests by decrying the business of a rival, were to proceed to do so by communications in the daily press, it is plain that these, though having in view the same purpose which the publication by the official board was meant to accomplish, can in no sense be regarded as corporate acts. They have not the corporate authorization ; they are not made within the apparent scope of the servant's duty ; and the tort is consequently an individual tort, purely and solely, and redress must be sought accordingly." Cooley, Torts, 121. ERLE, C. J., in Green v. Omnibus Co., 7 C. B. (N. S.) 302, says : " I take the whole tenor of the authorities to show that an action for a wrong done lies against a corporation when the act of the corporation — the thing done — is within the purpose of the corporation, and it has been done in such a manner as to constitute what would be an actionable wrong if done by a private individual."

What has been quoted from Judges COOLEY and ERLE was said in reference to private corporations. The rule as there announced would of course be relaxed, as applied to *quasi* public corporations; but if the rule applicable to private corporations were held to obtain here, this plaintiff, on the evidence, ought not to be bound by the representations or unauthorized agreements of its treasurer. It was not presumably a contract he had a right to make, not one presumably within the scope of his duty as treasurer. The defendant was bound to take notice of the powers and authority of the treasurer. He was not authorized to presume that the treasurer had any authority to individually act for this district; certainly he was not authorized to presume that the treasurer had authority to make an illegal contract. The treasurer could only speak as a private citizen, in absence of any authority conferred upon him by the district meeting or the district board. He was in no position to influence or control public prosecutions. He was not district attorney, a magistrate, nor in any way connected with the prosecution of public offenders. No prosecution had been commenced; and if there had, and he had been shown to have made such corrupt agreement, it was necessary to go further, and connect the district with it, either by previous authority conferred, or subsequent ratification of his acts with knowledge of the fact. A whole class of people cannot be wronged and deprived of their property by the over-officious acts of a zealous self-constituted agent, acting without authority, and in a manner not authorized by law. If such were the rule, there would be no safety in our republican form of government, where all acts must be performed by agents. The wholesome and safe rule is that all parties dealing with these public officers must see to it that they are authorized to make the contract entered into, and to hold them and all persons who contract with such officers to a rigid and strict accountability for their public acts.

We are clearly of the opinion, from a careful examination of this case :

1. That no corrupt agreement was shown to have been made with the treasurer Brown which would make the contract void as against public policy.

2. That there is not shown any authorization or ratification on

the part of the district which would bind it, if such agreement were found to have been made.

The case is affirmed.   All the justices concur, except CARLAND, J., who concurs upon the last point.