MINOT SPECIAL SCHOOL DISTRICT NUMBER ONE, a Municipal Corporation, and Peter Fugelso, S. J. LaDue, L. H. Piper, Albert Lowe, and H. E. Byorum of the City of Minot, in the County of Ward and State of North Dakota, Individually and as the Board of Education of said School District, Appellants, v. S. A. OLSNESS, as Commissioner of Insurance of the State of North Dakota, Respondent.

(45 A.L.R. 1337, 208 N. W. 968.)

**Constitutional law — statutes establishing state fire and tornado fund held constitutional.**

1. Chapter 159, Laws 1919 (amended by chapter 154, Laws 1925) establishing a state fire and tornado fund for the purpose of furnishing fire and tornado insurance upon the property of the state, and counties, cities and other political subdivisions, is not unconstitutional on the ground that it abrogates or impairs the right of freedom of contract.

**Insurance — statutes establishing state fire and tornado fund to furnish insurance on public property held constitutional.**

2. Said chapter 159 does not violate any express or implied constitutional guarantee of the right of local self-government.

**Constitutional law — wisdom, etc., of legislation for legislature not for the court.**

3. The wisdom, necessity or expediency of legislation are matters for legislative, and not for judicial, determination.

**Constitutional law — safety of plan of insurance provided by law is for legislature not for the courts.**

4. Whether the plan of insurance provided by the State Fire and Tornado Fund law is adequate or inadequate, safe or unsafe, are matters for legislative, and not for judicial, determination.

Note.—(1) Constitutionality of statutes providing insurance fund for public buildings, see annotation in 45 A.L.R. 1348.

(3) Expediency and effectiveness of statute, see 25 R. C. L. 809; 3 R. C. L. Supp. 1430; 4 R. C. L. Supp. 1602; 5 R. C. L. Supp. 1347.

(5) Necessity that complainant's rights be affected by particular provisions of statute attacked, see 6 R. C. L. 90; 2 R. C. L. Supp. 21; 4 R. C. L. Supp. 379; 5 R. C. L. Supp. 319; 6 R. C. L. Supp. 354.

**Constitutional law — litigant may question validity of act when it is applied to his disadvantage.**

    5. A litigant can be heard to question the validity of an act only when, and in so far as, it is applied to his disadvantage.

**Public debt — statute establishing state fire and tornado fund does not create state debt.**

    6. Chapter 159, Laws 1919, does not create an indebtedness on the part of the State of North Dakota at all. Any claim arising by reason of a loss under said statute is a claim against the state fire and tornado fund alone.

**Constitutional law — statute creating state fire and tornado fund does not delegate taxing power to commissioner of insurance: held constitutional.**

    7. Said chapter 159 is not unconstitutional on the ground that it delegates taxing power to the commissioner of insurance.

Opinion filed February 17, 1926.

Constitutional Law, 12 C. J. § 177 p. 760 n. 57; § 336 p. 850 n. 41 New; § 390 p. 887 n. 38; p. 890 n. 42 New; § 459 p. 945 n. 24; p. 947 n. 67; § 460 p. 949 n. 6, 9, 13; p. 951 n. 41 New. Insurance, 32 C. J. § 11 p. 982 n. 93 New. Municipal Corporations, 28 Cyc. p. 301 n. 38; p. 308 n. 75; p. 311 n. 8. Schools and School Districts, 35 Cyc. p. 832 n. 82; p. 833 n. 87.

From a judgment of the District Court of Burleigh County, *Jansonius*, J., plaintiffs appeal.

Affirmed.

*L. J. Palda, Jr., C. D. Aaker,* and *C. E. Brace,* for appellants.

*George F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondent.

CHRISTIANSON, Ch. J. This is a proceeding to prohibit and enjoin the commissioner of insurance of this state from enforcing the State Fire and Tornado Fund Law (chapter 159, Laws, 1919, as amended by chapter 154, Laws 1925) against the plaintiff school district. Plaintiffs base their right of action solely upon the ground that the State Fire and Tornado Fund Law is unconstitutional. The trial court dismissed the proceeding and the plaintiffs have appealed.

Section 1 of the act reads: "On and after August 1st, 1919, no officer or agent of this State and no person or persons having charge of any public buildings or property of the State shall pay out any public

moneys or funds on account of any insurance against loss by fire or tornado or shall in any manner contract for or incur any indebtedness against the State on account of any such insurance upon any of the public buildings, furniture or fixtures or property of any kind whatever belonging to the State except in the manner hereafter provided."

Section 2 requires the various state officers to make reports to the insurance commissioner of state buildings and property and the insurable value thereof.

Section 3 provides that on or between July 1st and August 1st 1919, and annually thereafter, the commissioner of insurance shall provide for the insurance in the state fire and tornado fund of all state property subject to destruction by fire or tornado for an amount not to exceed 90 per cent of the actual value of the property, as such value is determined by the commissioner and the officer or board having control of such property; that the commissioner shall fix the rate of premium which in his opinion is the average rate charged by responsible fire and tornado companies doing business in this state, and issuing policies on property of similar kinds and exposed to risk of fire and tornado in like manner; that the commissioner shall ascertain the amount of insurance on all such property and provide for such additional insurance in the state fire and tornado fund as may be necessary.

Section 4 provides that the commissioner of insurance shall certify to the state auditor the amount of insurance carried upon property belonging to the state, together with a statement of the amount of premium, and requires the state auditor to issue a warrant for the amount of the premium.

Section 5 provides that on August 1st of each year, each county auditor, city auditor, town, village and school district clerk, as the case may be, "shall report to the commissioner of insurance, the sound, depreciated or insurable value of each building or risk and contents therein, and such other information as may be required by the Commissioner of Insurance on forms provided by him."

Section 6 reads as follows: "From and after August 1st, 1919, the insurance on all property of any such county, city, town, village or school district, shall be provided for by the commissioner in the manner provided for the insurance of property of the state except that the amount of insurance and the premiums thereon shall be certified by the

commissioner to the clerk or auditor of the town, village, city, county or school district. Upon receipt of such certification, the amount of premium so certified shall, on or before sixty days from the date of such certification, be remitted by the proper officer to the commissioner of insurance to be by him deposited with the state treasurer to the credit of the state fire and tornado fund and which shall be used only for the purposes provided for in this act. In case of failure to pay the same within sixty days from the date of such certification, the town, village, city, county or school district official or officials responsible therefor shall become jointly and severally, as the case may be, personally liable for the same, in an amount equal to double the premium due from such town, village, city, county or school district, and in case of such default it shall· be the duty of the state insurance commissioner to notify the attorney general, who shall bring an action in the courts of this state, or shall direct the state's attorney of the county in which such delinquency occurs to bring such action, to recover the amount hereinbefore provided for."

Section 7 provides that the commissioner of insurance shall not cause any insurance policies to be cancelled "which are in effect on August 1st, 1919, but shall provide for the insurance in the state fire and tornado fund of buildings and property as hereinbefore stated, increasing the amount of insurance in the state fire and tornado fund at such times as the policies existing on above date may from time to time require so as to maintain at all times the amount of insurance required by the provisions of this act."

Section 8 provides for the adjustment and payment of losses and it is provided: "If at any time sufficient funds are not available in the state fire and tornado fund to cover any loss or damage sustained by fire or tornado, the person or board under whose supervision or charge such building or property might be, shall submit to the commissioner of in-surance a claim for the amount of the adjustment of loss or damage, made by him, which claim, when approved by the commissioner of insurance, shall be by him submitted to the state auditing board, and if the state auditing board shall approve the same it shall make it payable ninety days after the end of the next session of the legislature, it shall bear interest at 5 per cent per annum, and the state auditor shall, on the ninetieth day succeeding the last day of the next session of the legis-

lature, draw a warrant upon the state treasurer, against any fund appropriated by such legislature for the purpose, payable to such person or board, as trustee for the State or political subdivision which they represent, in the amount of such claim with interest. Thereafter, whenever the State Fire and Tornado Fund shall have acquired a surplus sufficient to pay any or all of the claims paid out of such special funds of the state, the commissioner of insurance shall draw his warrants upon the state treasurer against the state fire and tornado fund, and deliver same to the state treasurer, and the amount of said warrants shall be credited to the general fund of the state."

Section 9 relates to the readjustment of rates and provides that when the state fire and tornado fund shall equal 10 per cent of the risks carried, "it shall be the duty of the commissioner of insurance to so adjust the premium to be paid as to reduce the amount to the lowest possible amount consistent with maintaining said Fire and Tornado Fund at said per cent."

Section 10 provides for the arbitration of the amount of loss, when there is a dispute in regard thereto, and provides the precedure where arbitration is had.

Section 11 authorizes the commissioner of insurance to employ the necessary help and places a limitation upon the amount to be expended for this purpose.

Section 12 provides that the provisions of the act shall not apply to property of any town or school district located outside of the incorporated limits of any city or village unless a written application for such insurance is made and the same is approved by the commissioner of insurance.

Section 13 relates to the classification and limitation of risks. In general the section classifies buildings as regards their fire-proof character and limits the amount of insurance which may be carried by the state fire and tornado fund upon any one risk within each of the classes so enumerated. And it empowers the commissioner of insurance to place re-insurance on any risk with some reliable fire and tornado insurance company or companies for the amount of insurance required to be placed upon such risk in excess of the limit authorized to be carried in the state fire and tornado fund.

Section 14 empowers the commissioner of insurance to collect the

entire premium for insurance from the State and the various political subdivisions thereof, and provides that he shall deposit the same in the state fire and tornado fund and "draw his warrant upon the State Treasurer against the state fire and tornado fund for the amount of premium due upon that portion of the insurance placed with reliable fire and tornado insurance company or companies."

Section 15 repeals all acts and parts of acts in conflict with the act in question.

Section 16 declares an emergency to exist and provides that the act shall take effect immediately upon its passage and approval.

Appellants assert that the act in question is unconstitutional for the following reasons:

1. That it deprives plaintiffs of the right of freedom of contract, in contravention of the 14th Amendment to the Constitution of the United States, and § 13 of article 1 of the Constitution of North Dakota.

2. That it violates the right of local self-government impliedly guaranteed to the plaintiff school district by the state Constitution.

3. That it creates an unlawful monopoly.

4. That the insurance afforded by the state fire and tornado fund is wholly inadequate; that the plan is unsafe, and that an enforcement of the statute will deprive the plaintiff school district of adequate protection against loss by fire, and, hence, will deprive it of its property without due process.

5. That the provision in the statute, which imposes a liability in double the amount of the premium upon the officers of all public corporations and political subdivisions who fail to comply with the law, in effect, imposes a burden upon the right of judicial review, and renders the statute invalid within the rule announced in State ex rel. Dushek v. Watland, 51 N. D. 710, 201 N. W. 680.

6. That it creates an indebtedness on the part of the state in excess of the limit fixed by § 182 of the Constitution.

7. That it delegates to the commissioner of insurance the power to impose a tax upon the state, and the counties, cities and political subdivisions of the state.

The constitutional questions thus presented will be considered in the order stated.

1. It is well settled that the "liberty" guaranteed to every citizen by the 14th Amendment to the Constitution of the United States, and the counterpart thereof in the state Constitution includes the right to make and enforce lawful contracts. 6 R. C. L. pp. 270 et seq; 12 C. J. pp. 945, 948, et seq. But these rights are not unlimited even as applied to natural persons; they are subject to the power of the state to place reasonable regulations thereon in the interest of the general welfare, and this is especially so as regards property devoted to a public use. 12 C. J. pp. 947, 949. But, obviously, the freedom of contract guaranteed by the Federal and state Constitutions does not operate in behalf of governmental agencies and political subdivisions so as to inhibit the legislature from limiting or prohibiting their right of contract. Pawhuska v. Pawhuska Oil & Gas Co. 250 U. S. 394, 63 L. ed. 1054, P.U.R.1919E, 178, 39 Sup. Ct. Rep. 526; Trenton v. New Jersey, 262 U. S. 182, 67 L. ed. 937, 29 A.L.R. 1471, 43 Sup. Ct. Rep. 534; Risty v. Chicago R. I. & P. R. Co., 270 U. S. 378, 70 L. ed. (Adv. 241), 46 Sup. Ct. Rep. 236. Such agencies or corporations owe their existence to the law; they have such power to contract, and such power only, as are conferred upon them by law. The legislature may impose on such corporations the obligation to support paupers within their limits. 1 McQuillin, Mun. Corp. p. 534. It may impose on the counties of this state the obligation to pay mother's pensions. Laws 1915, chap. 185; Cass County v. Nixon, 35 N. D. 601, L.R.A.1917C, 897, 161 N. W. 204. It may establish a teacher's pension fund, and direct that ten per cent of the county tuition fund be set aside for this fund. State ex rel. Haig v. Hauge, 37 N. D. 583, L.R.A.1918A, 522, 164 N. W. 289. It may establish a workmen's compensation fund, and require the various counties, cities and school districts of the state to contribute to such fund. Laws 1919, chapter 162; State ex rel. Amerland v. Hagan, 44 N. D. 306, 175 N. W. 372. It may establish a state bonding fund for the purpose of furnishing official bonds for county, city, village, school district and township officers in this state, and direct that the premiums for such bonds be paid by the proper authorities of each county, city, village, school district or township from its treasury. Laws 1915, chap. 62; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. In State ex rel. Linde v. Taylor, supra, this court said:

"The relations existing between the state and its municipalities were considered by the Supreme Court of the United States in Atkin v. Kansas, 191 U. S. 207, 48 L. ed. 148, 24 Sup. Ct. Rep. 124. The court said: 'Such corporations are the creatures, mere political subdivisions, of the state, for the purpose of exercising a part of its powers. They may exert only such powers as are. expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the state. They are, in every essential sense, only auxiliaries of the state for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricted or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed.' . . .

"The power of the legislature to control its municipalities in matters of public concern is generally recognized. 28 Cyc. 301, 308, 311. It has been recognized by this court, and by the highest court in the land. In Tribune Printing & Binding Co. v. Barnes, 7 N. D. 591, 75 N. W. 904, this court sustained the validity of, and enforced, an act requiring 'all county printing (including all legal notices published by or in behalf of the county) and all supplies and printed matter necessarily used by county officials in discharging their duties shall be done in the state and if practicable in the county ordering the same.' And in State ex rel. McCue v. Lewis, 18 N. D. 125, 119 N. W. 1037, this court sustained the constitutionality of an act requiring each county in the state to pay $50. semi-annually to the superintendent of the Institute for the Feeble-minded, for each indigent inmate of such institution, admitted from such county. In Heim v. McCall, 239 U. S. 175, 60 L. ed. 206, 36 Sup. Ct. Rep. 78, Ann. Cas. 1917B, 287, the Supreme Court of the United States affirmed the New York court of appeals, and sustained the constitutionality of a statute which provided that only citizens of the United States might be employed in the construction of public works by or for the state or any of its municipalities, and that in such employment citizens of New York must be given preference. In ¶ 2 of the syllabus in that case the Federal Supreme Court held: 'The general power of a state over its municipalities extends to

the regulation of the kind of laborers which may be employed in the construction of public works by or for such municipalities.' " 33 N. D. 111, 113.

Strictly speaking a school district is not a municipal corporation. It is a quasi-municipal corporation and possesses only such powers as have been conferred upon it by the legislature. 1 McQuillin, Mun. Corp. §§ 111, 115; 24 R. C. L. p. 104; School Dist. v. Alderson, 6 Dak. 145, 41 N. W. 466. See also School Dist. v. King, 20 N. D. 614, 127 N. W. 515; State ex rel. Haig v. Hauge, supra. And we are wholly agreed that (in the absence of specific constitutional inhibition) the legislature has power to either grant to, or withhold from, the officers of a school district authority to insure the property thereof against loss by fire. And it has equal power to direct that the insurance be accomplished in a certain manner. People v. Stanley, 193 Cal. 428, 225 Pac. 1. See also State ex rel. Linde v. Taylor, supra.

2. It is next contended that the act in question violates the right of local self-government. In support of this contention plaintiffs cite the decision of this court in Ex parte Corliss, 16 N. D. 470, 114 N. W. 962. In our opinion the decision cited in no manner supports the contention of the plaintiffs here. Ex parte Corliss, supra, involved the validity of a statute creating the office of enforcement commissioner. The statute provided that the governor should appoint such commissioner, and it conferred upon such commissioner certain powers and duties in the enforcement of the state prohibitory law, as well as power to appoint special enforcement sheriffs in the various counties of the state. The powers and duties conferred upon such commissioner and the enforcement sheriffs to be appointed by him had formerly been discharged by the sheriffs and state's attorneys of the various counties of the state. The office of sheriff and State's attorney are both constitutional offices. And the gist of the holding in Ex parte Corliss, supra, is that the sheriff and state's attorney being constitutional officers and as such vested with certain inherent functions that the legislature could not strip them of these functions and vest a state officer appointed by the Governor with the powers expressly or impliedly conferred upon such local constitutional officers by the Constitution. The doctrine of local home rule announced in Ex parte Corliss, supra, was specifically limited to constitutional officers, that is, to officers "im-

bedded in the Constitution" and the decision negatived, rather than affirmed, the idea that the doctrine of home rule announced therein is applicable to political corporations other than counties. The court said: "It must not be overlooked that there is a wide distinction in this respect (local self-government) between counties and municipalities, the former by express provisions of the Constitution having been made political subdivisions of the state, while cities and other municipalities, so far as this state and most other states are concerned, are mere creatures of the legislative department, and, being such, are, of course, in all respect subject to legislative regulation and control." 16 N. D. 477.

The Constitution makes no provision for the government of schools. The constitutional mandates are:

"A high degree of intelligence, patriotism, integrity and morality on the part of every voter in a government by the people being necessary in order to insure the continuance of that government and the prosperity and happiness of the people, the legislative assembly shall make provision for the establishment and maintenance of a system of public schools which shall be open to all children of the state of North Dakota and free from sectarian control. This legislative requirement shall be irrevocable without the consent of the United States and the people of North Dakota." Const. § 147.

"The legislative assembly shall provide, at its first session after the adoption of this constitution, for a uniform system of free public schools throughout the state, beginning with the primary and extending through all grades up to and including the normal and collegiate course." Const. § 148.

"A superintendent of schools for each county shall be elected every two years, whose qualifications, duties, powers and compensation shall be fixed by law." Const. § 150.

"A state superintendent of public instruction shall be elected every two years whose powers and duties . . . shall be as prescribed by law." Const. §§ 82 and 83.

The Constitution further provides: "The legislative assembly shall provide by general law for the organization of municipal corporations, restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or

assessment for any purpose shall not be diverted to any other purpose except by authority of law." Const. § 130.

Obviously, no one of these provisions contain any inhibition against the enactment of legislation such as that involved here. Curryer v. Merrill, 25 Minn. 1, 33 Am. Rep. 450; State ex rel. Linde v. Taylor, supra; Runge v. Glerum, 37 N. D. 618, 164 N. W. 284.

Plaintiffs also rely upon, and in their briefs quote extendedly from, certain decisions of the supreme court of Michigan. The constitution of Michigan guarantees the right of local self-government (at least so far as cities and villages are concerned) in far more specific and comprehensive terms than does the constitution of this state; and no court has more consistently and vigorously upheld this right than has the Supreme Court of Michigan. But even the Michigan supreme court does not sustain the contention of the plaintiffs as regards the statute in question here. Thus, in Wood v. Detroit, 188 Mich. 547, L.R.A.1916C, 388, 155 N. W. 592, it was contended that the Workmen's Compensation Law of that state was violative of the right of local self-government of the city of Detroit. By the provisions of the act private employers were given an election whether they would accept the act; but municipal and quasi-municipal corporations, i. e., counties, cities, school districts, etc., were given no option, as to them the act was made compulsory. In answering the contention that the act was violative of the local self-government doctrine, the court said: "The actual basis for the carrying on by municipal corporations of private municipal business is taxation. There is not, and there cannot be, any merely local power to tax persons or property, and municipal activity may still be, and it is the command of the Constitution that it shall be, restricted, limited by the limitation of the power to tax, to borrow money and to exploit the municipal credit. Moreover, municipal corporations are still state agencies, and as such subject to legislative direction and control, none the less so because the exercise of such control may indirectly affect a private municipal activity. The act, in its application to municipalities, involves no right of local self-government, or local control and management of corporate property. It deprives the municipality of none of its property, because, in effect, it is made lawful to raise by tax the money required to pay all injured employees some compensation."

It can hardly be contended that to contract for insurance against loss by fire is more distinctly an exercise of a function of local self-government than to contract for workmen's compensation insurance; or to contract for bonds to insure the fidelity of local officers. In our opinion no express or implied constitutional guarantees of the right of local self-government are contravened by the fire and tornado fund act.

3. It is next contended that the act is invalid because it gives the state fire and tornado fund a monopoly of the fire and tornado business of the state and of its political subdivisions. There is no contention, however, that there is any specific constitutional inhibition against the creation of such monopoly; but it is asserted that the same is violative of the fundamental rights of life, liberty and the pursuit of happiness. The argument is, we think, untenable. "The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 58 L. ed. 1011, L.R.A.1915C, 1189, 34 Sup. Ct. Rep. 612; State ex rel. Linde v. Taylor, 33 N. D. 76, 120, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. The act in question deals with subjects peculiarly affected with public interest and subject to legislative regulation and control.

The power of the legislature to fix the powers of its political subdivisions has already been alluded to. The legislature had undoubted power to determine whether the property of the state should be insured against loss by fire and tornado at all, and prescribe the manner in which such insurance should be provided. It also had the power to authorize the officers of a school district to insure the property of the school district or it might withhold such authority altogether, or grant the authority, subject to such conditions as it deemed wise and proper. The business of insurance is itself peculiarly subject to legislative con-

trol. State ex rel. Linde v. Taylor, 33 N. D. 76, 120, 121, L.R.A. 1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. This is not a private monopoly in any sense. The act relates to the insurance of public property by means of a fund, supported solely by contributions from public moneys. It is settled beyond controversy that a legislature may, without violating the constitutional guarantees of due process and equality of protection of the law, establish a compulsory workmen's compensation fund, and give such fund a monopoly of the business of all workmen's compensation insurance within the state, including private as well as public employers. Mountain Timber Co. v. Washington, 243 U. S. 219, 61 L. ed. 685, 37 Sup. Ct. Rep. 260, Ann. Cas. 1917D, 642, 13 N. C. C. A. 927; State ex rel. Amerland v. Hagan, 44 N. D. 306, 175 N. W. 372. And we are aware of no reason why the legislature does not as well have power to give to the state fire and tornado fund a monopoly of the particular business covered by the act. Patterson v. Wollmann, 5 N. D. 608, 33 L.R.A. 536, 67 N. W. 1040.

4. It is next contended that the insurance afforded by the state fire and tornado fund is wholly inadequate; that the plan is unsafe and that an enforcement of the statute will deprive the plaintiff school district of adequate protection against loss by fire or tornado and, hence, will operate to deprive it of its property without due process. The contention thus advanced challenges the wisdom of the enactment, rather than its validity. Whether public property shall be insured, and if so how, is a question for legislative, and not for judicial, determination. "We are not concerned with the wisdom or expediency of the legislative enactment, or with the form in which the legislative will was expressed, further than to ascertain the intention of the lawmakers and to determine whether such intention, as expressed in the act, contravenes any constitutional inhibitions. In other words, we are concerned alone with the question of legislative power; the limitations upon that power are those fixed by the Constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. For, as was well said by the great Chief Justice: 'Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the Constitution are constitutional.' M'Culloch v.

Maryland, 4 Wheat. 316, 4 L. ed. 579." State v. First State Bank, 52 N. D. 231, 202 N. W. 398.

5. It is next contended that the provisions of the statute which impose a liability in double the amount of the premium upon the officers of all public corporations who fail to comply with the law, in effect, imposes a burden upon the right of judicial review such as to be tantamount to a denial of such right at all; and, that hence, the statute is invalid within the rule announced by this Court in State ex rel. Dushek v. Watland, 51 N.·D. 710, 201 N. W. 680. It is a sufficient answer to this contention to say that the alleged penalty provisions are not involved here. "For a litigant can be heard to question the validity of a statute only when and in so far as it is sought to be applied to his disadvantage." State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292. Even though the alleged penalty provisions are invalid, the validity of the act is not affected thereby as these provisions may be stricken without in any manner affecting the other provisions of the act. State ex rel. Hughes v. Milhollan and State ex rel. Dushek v. Watland, supra.

6. It is next contended that the act creates an indebtedness on the part of the state in excess of the limit fixed by § 182 of the Constitution. This contention is clearly without merit. The act does not purport to create an indebtedness on the part of the state at all. The obligations of the state fire and tornado fund are not made obligations of the state.

7. It is next contended that inasmuch as the commissioner of insurance is authorized to place insurance upon the property of the state and the various political subdivisions thereof, and fix the rates of the insurance premiums according to the standards provided in the act, that he is, in effect, empowered to levy a tax. We cannot sustain the contention. It is true, the statute imposes obligations upon the officers of the political subdivisions of the state to cause the property belonging to such political subdivisions to be insured in the state fire and tornado fund and authorizes the commissioner of insurance to apply the rules prescribed by the statute for the purpose of fixing the amount of the premium due to the state fire and tornado fund for such insurance, but it nowhere authorizes him to levy a tax to discharge the obligation. The power to levy taxes is in no manner changed. It still remains with

the officers empowered by law to levy them. Nor does the commissioner of insurance impose the obligation for the insurance premium. The obligation is imposed by the statute, and the commissioner of insurance merely applies the rules prescribed in the statute for the purpose of arriving at the amount of the premium to be paid. The obligation imposed upon the political subdivisions of the state to pay premiums, and the mode of fixing the amount of such premium in each case, under the state fire and tornado fund law, are in no essential particular different from the obligation imposed to pay premiums under the Workmen's Compensation Act, and the mode of ascertaining such premium.

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." Gray, Limitations of Taxing Power, § 540.

Our conclusion is that the act in question is not vulnerable to any of the constitutional objections raised against it in this proceeding.

The judgment appealed from is affirmed. All concur.

JOHNSON, BIRDZELL, NUESSLE, and BURKE, JJ., concur.