matter where the summons is to be served within the city limits, the
court in the district where it is issued may direct and control its serv-
ice without the aid of the magistrate in the district of service.   This
provision serves to retain control of the process in the district where
it emanated, rather than to share such control with the justices in
other districts.   And that the magistrates of the district where the
action was commenced should retain exclusive control of the process
of the court therein was certainly regarded as a statutory require-
ment under the old law, and, being consistent with the general fea-
tures of the new law, must be regarded as expressly re-enacted in sec-
tion 1369, supra, to the extent of vesting such control in the magis-
trate of the district where the action is commenced, or at least in
some other magistrate of the borough sitting in that district at the
time.   Certainly there is no ground for the contention that a justice
of the municipal court in the borough of Richmond could, in the
absence of express authority, empower persons other than marshals
to execute process in actions instituted in the borough of Queens,
and it is quite necessary to hold to that extent in order to accord
with the appellants' contention.

The objection being jurisdictional, and not having been waived, I
am of opinion that nothing which occurred upon the trial operated to
deprive the defendant of the right to a favorable ruling, notwith-
standing it was granted upon a second motion.   The judgment
should be affirmed.

Judgment of the municipal court affirmed, with costs.   All concur.

---

(68 App. Div. 204.)

### GRIEBEL v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   January 17, 1902.)

1. WITNESSES—PRIVILEGED COMMUNICATION—PHYSICIAN.
    Under Code Civ. Proc. § 834, providing that no physician shall disclose
    any information which he acquired in attending a patient which was
    necessary to enable him to act in his professional capacity, where plain-
    tiff claimed that he was injured by driving into a hole in the street
    near defendant's railroad track, the surgeon who attended him should
    be permitted to answer the question, "Did the plaintiff state to you in
    the hospital ambulance that he had slipped from his wagon while trying
    to get onto it, and that the wagon ran over him?" since such statement
    could have no bearing on the treatment of plaintiff by such surgeon.

2. SAME—RULES OF HOSPITAL.
    Where the rules of a hospital require the house surgeon, on receiving
    a patient who has been injured by an accident, to ascertain how the ac-
    cident happened, statements made by a patient in compliance with such
    rules are privileged.
    Goodrich, P. J., dissenting in part.

Appeal from trial term, Kings county.

Action by Burkhard Griebel against the Brooklyn Heights Rail-
road Company.   From a judgment for plaintiff, and from an order
denying a new trial, defendant appeals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and JENKS, JJ.

I. R. Oeland, for appellant.

J. Stewart Ross, for respondent.

WILLARD BARTLETT, J.   According to the testimony of the plaintiff, he was injured by accidentally driving into a hole in the street near the railroad track of the defendant.   His wounds were treated at the Homeopathic Hospital in Brooklyn.   One of the witnesses called by the defendant was the surgeon who had accompanied him in the ambulance from the place of the accident to the hospital. This witness was asked, "Did the plaintiff state to you in the hospital ambulance that he had slipped from his wagon while trying to get onto it, and that the wagon ran over him?"   From the record it appears that this question was objected to without any ground of objection being stated, that the objection was sustained, and that the defendant excepted.   The witness was afterwards permitted to say that the plaintiff, in answer to an inquiry, stated to him how the accident happened; but no further attempt appears to have been made to ascertain what the plaintiff said to the ambulance surgeon on that subject.   It seems to me quite clear that the trial court erred in sustaining the objection to the question which I have quoted, unless this court was wrong in deciding the case of De Jong v. Railroad Co., 43 App. Div. 427, 60 N. Y. Supp. 125, and unless the former general term of the Third department was also wrong in deciding the case of Brown v. Railroad Co., 45 Hun, 439.   The learned counsel for the respondent recognizes that these decisions are adverse to the ruling under consideration, and squarely challenges their correctness, arguing that the De Jong Case followed the Brown Case, and that the latter decision was based upon an erroneous interpretation of Edington v. Insurance Co., 77 N. Y. 567, which would have been corrected by reference to Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770.   Section 834 of the Code of Civil Procedure provides:

"A person duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity."

The rule asserted in the Brown Case, and followed by us in the De Jong Case, was simply this:   That a trial court cannot properly exclude testimony from a physician or surgeon as to information which he acquired in attending a patient in his professional capacity, unless the information was necessary to enable him to act in that capacity.   In the Browne Case the plaintiff was injured by a train while trying to cross the defendant's railroad.   The defendant attempted to show by the doctor who attended the plaintiff professionally immediately after the injury that the plaintiff had told him that he heard persons shouting as he approached the track, and saw a man swing his hat, but did not think where he was until the train was right on him.   This evidence was excluded on the ground that the witness was incompetent to give it under section 834 of the Code, and the general term declared that its exclusion was error, because the information had no relation whatever to the plaintiff's condition, and was in no respect necessary to enable the physician to act in his pro-

fessional capacity. The case of Renihan v. Dennin, supra, is referred to in the opinion of Mr. Justice Bockes, who plainly regarded it as in harmony with his view, instead of hostile to it, as that decision is construed by the learned counsel for the respondent. The accident which was the subject of investigation in the De Jong Case also occurred at a railroad crossing, and the question put to the surgeon who attended the plaintiff was also designed to establish the plaintiff's contributory negligence. The doctor was asked whether the plaintiff had not stated to him, on the day when the doctor first called on him, that he did not observe the train until he was struck. We held that it was error to sustain an objection to this question, under section 834 of the Code, inasmuch as nothing that the plaintiff could say in regard to his observation of the train which struck him, or his failure to observe it, could by any possibility have been either material or useful to the surgeon in his professional capacity. If these decisions were wrong, it seems to me the qualifying clause at the end of section 834, contained in the words "and which was necessary to enable him to act in that capacity," might as well have been wholly omitted from the statute. In my opinion, they should not be eliminated by a process of construction which is nothing more or less than judicial legislation. We have no right thus to nullify an act of the legislature, or any portion thereof. If the lawmaking power desires to extend the privilege of secrecy to all statements of every kind made by an injured person to his medical attendant, it is very easy to say so in plain and unmistakable language. Up to the present time, however, the legislature has refused to go so far as that. It has limited the privilege to information necessary to enable the physician or surgeon to act in the capacity of physician or surgeon; and when, in any case, it is perfectly plain that the information given is not of this character, there is no reason why the courts should be sedulous to create a protection which the legislature has not seen fit to bestow. It is easy, of course, to imagine cases, and any judge who has had much experience in the trial of negligence suits can recall many, where a disclosure by the injured person of the manner in which the accident occurred might well be deemed necessary to the furtherance of proper surgical or medical treatment. In what I have said, of course, I do not refer to cases of this character, but only to those in which there is absolutely nothing to indicate that the information disclosed by the patient, and sought to be laid before the jury, could have any possible bearing upon the professional conduct or action of the medical man to whom the disclosure was made.

I have thus far referred only to the ruling excluding the evidence of the ambulance surgeon, Dr. William F. Chamberlain. The house surgeon, Dr. John L. Castlebury, who treated the plaintiff in the Homeopathic Hospital, was also called as a witness for the defendant. He testified that he inquired of the plaintiff for the history of the accident, and as to how it happened, and that the plaintiff stated to him how it happened; but the witness was not allowed to go further on this subject, the court sustaining an objection to the question, "What did he say?" on the ground that it was incom-

petent under the provision of the Code cited. It is not clear that this ruling was erroneous, inasmuch as it appeared that it was always the custom at the hospital to get a full history of the case, including an account of how the accident occurred, as soon as each patient was admitted. If this means that it was the duty of the house surgeon to find out from the patient how the accident occurred in order to comply with the rules of the institution, then the information given by the patient on that subject may be deemed privileged, under the authority of Green v. Railroad Co., 65 App. Div. 54, 72 N. Y. Supp. 524. There it was held that information obtained by a surgeon from a patient for the purpose of making a hospital record, which it was the surgeon's duty to make, should be regarded as information necessary to enable the surgeon to act in a professional capacity. No such inference or assumption can be indulged in, however, so far as relates to any disclosure to Dr. Chamberlain, the ambulance surgeon, in the present case; and on account of the ruling excluding his testimony I think the judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., who dissents in part.

GOODRICH, P. J. I concur in the first ground of reversal stated in the opinion of Mr. Justice WILLARD BARTLETT, but, as there is to be a new trial, it seems to me proper to refer to the exclusion of Dr. Castlebury's testimony, which, in my opinion, was just as much error as the exclusion of Dr. Chamberlain's testimony. The statement of the plaintiff to Dr. Castlebury was requisite only to the commencement of any treatment whatever. It did not relate to the method of the treatment. I regard the words "enable him to act in that capacity" as relating to acting one way or another in professional treatment, not to the matter of acting as a physician at all. People v. Koerner, 154 N. Y. 355, 366, 48 N. E. 730. The hospital record is a matter between the physician and the hospital. So far as the evidence discloses, there is no necessity for this record to be made by the attending physician. It is true that it was in Dr. Castlebury's handwriting, but, for aught that appears, it might have been made by the superintendent. Dr. Castlebury says: "It is always customary to get a full history of the case at the time they are recorded,—how the accident was received,—as soon as the patient is admitted to the hospital." The witness, without objection, testified that the plaintiff "stated to me how it happened." The question, "What did he say?" evidently referred only to the manner in which the accident happened. It did not call upon him "to disclose any information" which was necessary to professional treatment by the physician. I think the exclusion was error. The objection was not pointed against a disclosure of information relating to professional treatment.