WALKER v. RAILROAD CO.

(Filed June 1, 1904).

1. NEGLIGENCE — *Proximate Cause—Railroads—Sufficiency of Evidence.*

In this action for injuries received from a sand-dryer there is evidence sufficient to go to the jury as to the negligence of the defendant, and that this negligence was the proximate cause of the injury.

2. CONTRIBUTORY NEGLIGENCE—*Evidence—Sufficiency of Evidence.*

In this action for injuries received from a sand-dryer the trial judge properly instructed the jury that there was no evidence of contributory negligence.

3. INSTRUCTIONS—*Issues—Contributory Negligence—Trial.*

While an instruction to the jury in a personal injury case to answer the issue of contributory negligence "no" is bad in form, yet it is not ground for reversal, where there is in fact an entire absence of evidence of contributory negligence.

4. ASSUMPTION OF RISK—*Railroads—Defenses—Acts (Private) 1897, ch. 56.*

Under the act depriving railroad companies of the defense of assumption of risk, a railroad company cannot plead such defense to an action by an employee for injuries from a defective sand-dryer.

ACTION by William Walker against the Carolina Central Railroad Company, heard by *Judge W. H. Neal* and a jury, at July Term, 1903, of the Superior Court of MECKLENBURG County.

This is an action on account of personal injuries received by the plaintiff through the negligence of the defendant. The evidence tends to prove that the plaintiff's clothing caught fire from a defective sand-dryer which he was operating in

the performance of his ordinary duties. The issues and answers thereto were as follows:

"Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?" Answer: "Yes."

"Did the defendant, by his own negligence, contribute to his own injury?" Answer: —

"What damage has the plaintiff sustained?" Answer: "$900."

The only assignments of errors are as follows: The defendant requested the Court to charge as follows: "There is no evidence of negligence of the defendant corporation, and the jury will answer the first issue 'No.' "

His Honor refused to give this instruction, to which refusal the defendant excepted.

The defendant further requested the Court to charge as follows: "There is no evidence that the hurt done to the plaintiff was caused by the negligence of the defendant, and the jury is therefore instructed to answer the first issue 'No.' "

His Honor refused to give this instruction, and to this refusal the defendant excepted.

Upon the second issue his Honor charged the jury as follows: "There is a second issue, Did the plaintiff, by his own negligence, contribute to his own injury? And the Court charges you, upon the testimony, to answer that issue No."

The plaintiff testified that he had been working for the defendant in the same capacity for three years, and had worked with the machine in bad shape for thirty days; that he had called the attention of the master machinist—the "boss man"—to the defects in the dryer and he had patched it up. Being asked to describe the machine, he did so as follows: "There was a kind of bowl, or hopper, with legs to it; kinder like a stove; hopper was in the shape of a sugar-loaf hat and stood on a foundation; underneath was holes the size of a silver dollar; sand ran out of hopper through these

---

WALKER *v.* RAILROAD CO.

---

holes; in the foundation was a door; the foundation was brick-work; there was a furnace underneath and above the foundation; this was made of cast-iron; hopper was made of wire and was funnel-shaped; don't know what kind of wire; good-sized wire. You put the fire in a door when the machine was in good order; put the sand—wet sand—in there to be dried. When it was dry the sand came out from the edges of the door all around where the holes were; had to get down and shovel it out where I could sift it; took it out with a large scoop. Machine had a pipe on it when it was in good shape a good while ago; pipe extended out through the top of the house. The sand-dryer was in a house; pretty good house; one room and had a partition—a kind of sand bin. He had took and patched it. The top rim of the bowl had fallen down on the bottom. They had took some of this old sewer-pipe and patched it where it had fell in, and dobbed it up with mud and left the stack off of it. There was an old piece of stack in the yard that I had used, but I couldn't manage with that. \* \* \* When I caught on fire I was shoveling sand from underneath, where the sand run out. The hopper had squshed down. I couldn't put but a little bit of sand in at the time; couldn't cover up the holes because it was shallow." (Shows jury where he was standing to take sand out). "I suppose the blaze of one of the holes caught me on fire. I don't know exactly. I was on fire and had to do around."

From a judgment for the plaintiff the defendant appealed.

*Clarkson & Duls* and *T. L. Kirkpatrick,* for the plaintiff.
*Burwell & Cansler* and *Day & Bell,* for the defendant.

DOUGLAS, J., after stating the facts. While we are not mechanical experts, we think that the fact that a cast-iron sand-dryer had the smoke-pipe knocked off, was "squshed

down" and was daubed up with mud, was some evidence of a defective machine from which the jury might have inferred the negligence of the defendant.   That the plaintiff's clothing caught on fire when the only fire anywhere near him was in the sand-dryer, would tend to show that he caught on fire from the sand-dryer. The further fact that he had been working with sand-dryers for three years and never caught fire until this machine became defective, would, with his other testimony, also tend to prove that the defect was the cause of his being burned.   Therefore, the prayers to instruct the jury that there was no evidence tending to prove the negligence of the defendant, or that such negligence was the approximate cause of the injury, were properly denied.   The duty of the defendant to furnish safe machinery, the failure of which constitutes continuing negligence, is too well settled to require any great degree of argument or authority.   *Greenlee v. Railroad,* 122 N. C., 977, 41 L. R. A., 399, 65 Am. St. Rep., 734; *Troxler v. Railroad,* 122 N. C., 903; S. C., 124 N. C., 189, 44 L. R. A., 313, 70 Am. St. Rep., 580; *McLamb v. Railroad,* 122 N. C., 862; *Coley v. Railroad,* 129 N. C., 407, 57 L. R. A., 817.

Upon the issue of contributory negligence the Court charged as follows: "The Court charges you, upon the testimony, to answer that issue No."

We cannot approve of the form of such an instruction, and yet as it was correct in legal effect under the testimony in this case we cannot set aside the verdict.   What his Honor evidently meant was that there was no evidence tending to prove contributory negligence, and in that we think he was correct.   As his charge was in legal effect merely the direction of a negative verdict upon the entire absence of evidence, it comes within the rule laid down in *Wittkowsky v. Wasson,* 71 N. C., 451, and *Spruill v. Ins. Co.,* 120 N. C., 141, cited with approval in *Lewis v. Steamship Co.,* 132 N. C., at page

910.  It has been suggested that the question of assumption of risk arose under the issue of contributory negligence and should have been submitted to the jury.  This is answered by reference to the act of February 23, 1897 (Private Laws, chapter 56), depriving railroad companies of such a defense. *Thomas v. Railroad,* 129 N. C., 392; *Cogdell v. Railroad,* 129 N. C., 398.  The judgment of the Court below is affirmed.

Affirmed.