## GRIEBEL v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   June 17, 1904.)

1. INJURIES—EVIDENCE—HOSPITAL TEMPERATURE CHART.

In an action for injuries, a "hospital temperature chart," known in the hospital as "bedside notes," containing a history of plaintiff's injury, taken by the physician on plaintiff's being admitted to the hospital, was inadmissible as evidence of the facts stated therein.

2. SAME—HARMLESS ERROR.

Where, in an action for injuries, plaintiff, on the examination of his hospital physician, brought out the only adverse information contained in a hospital chart written by the physician from knowledge acquired from plaintiff, the erroneous admission of the chart in evidence was not prejudicial to plaintiff.

Hooker, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Burkard Griebel against the Brooklyn Heights Railroad Company. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

See 74 N. Y. Supp. 126.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

J. Stewart Ross, for appellant.
I. R. Oeland, for respondent.

WILLARD BARTLETT, J.   This is an action to recover damages for injuries alleged to have been sustained through the negligence of the defendant corporation in allowing a hole or depression to exist upon or near its roadbed in a part of a public street which it was bound to keep in repair.   The plaintiff alleged that while driving a wagon along the street at this point the hole or depression caused the vehicle suddenly to lurch forward, so that he was thrown off and injured to such an extent that the amputation of his right leg became necessary.   The case has been tried four times.   The plaintiff succeeded upon the first trial, but the judgment in his favor was reversed for error in the rejection of evidence.   Griebel v. Brooklyn Heights R. R. Co., 68 App. Div. 204, 74 N. Y. Supp. 126. A second trial resulted in a disagreement of the jury.   Upon the third trial the plaintiff again recovered a verdict, which was set aside upon his own motion as inadequate; and on the fourth trial, which now comes up for review, a verdict was rendered for the defendant.

Three points are presented in behalf of the appellant:   (1) That the verdict was against the evidence; (2) that error was committed upon the trial in receiving in evidence a paper containing certain so-called "bedside notes," alleged to have been made in the Brooklyn Homeopathic Hospital, in reference to the plaintiff while he was a patient there; and (3) that the court erred in admitting the evidence of Dr. John L. Castlebury and Dr. William F. Chamberlain.

In considering the first point, we have carefully gone over the entire record, and deem it sufficient to say that the case seems to us to

be one in which a jury could find either way, according to the view which they saw fit to take of the facts and the inferences to be drawn therefrom, and the credibility of the witnesses for the respective parties. There is not that clear preponderance of evidence for the plaintiff which would justify an appellate court in setting aside a verdict against him as manifestly wrong upon the facts.

We agree with the learned counsel for the appellant that the so-called "bedside notes" were not admissible in evidence. They were introduced during the examination of a hospital nurse, who was in the Brooklyn Homeopathic Hospital at the time when the plaintiff was a patient there. She described the paper as a "temperature chart, known in the hospital as bedside notes," and said that such notes were taken in each case where a patient was brought to the hospital. We are not aware of any rule of evidence which makes such a paper, offered under such circumstances, admissible. Its contents related chiefly to the physical condition of the patient, specifying particularly the injuries from which he was suffering. While it was clearly error to admit the document, the only portion thereof which could have been harmful to the plaintiff was the following entry: "History, good. While getting on his wagon he slipped, and his horses started up, the wagon passing over his right knee and across abdomen." The portion quoted appeared to have been written by Dr. Chamberlain, one of the physicians of the hospital, from the statements made to him by the plaintiff, but this did not render the paper competent as original evidence. The manifest effect of the introduction of this statement was to lead the jury to infer that the patient had attributed the accident from the effects of which he was suffering to his own negligence instead of to the negligence of the defendant, and we think the judgment would have to be reversed for the admission of this evidence if it did not appear that it had already been fully laid before the jury by the learned counsel for the plaintiff himself in the cross-examination of a previous witness, Dr. Chamberlain. The record shows that while interrogating the doctor counsel referred to this very paper—the so-called bedside notes—as having been produced by the witness, and read several extracts from the same, including that which has been quoted, beginning with the word "history." This appears from the following extract from Dr. Chamberlain's cross-examination:

"I put down just what he (the plaintiff) stated to me, and wrote it in his exact words as he gave it to me at that time, and put down the words he used at that time. I don't think there is any question about that; whatever he told me I put down. Q. 'History. While getting onto his wagon he slipped, and his horses started up, the wagon passing over his right knee and across his abdomen.' Did this German use the word 'abdomen' to you? A. He may not have used the word 'abdomen,' but he signified it."

In view of the fact that the contents of the otherwise objectionable paper had been laid before the jury by the action of the plaintiff's counsel himself, we do not think that the subsequent reception of the paper could have done the plaintiff any harm, or constitute the basis of an exception available to him for the purpose of reversing this judgment.

The testimony of Dr. Castlebury and Dr. Chamberlain which is attacked as objectionable, was received in accordance with the decision of this court on the previous appeal, and we adhere to the decision then made as to its admissibility.   68 App. Div. 204, 74 N. Y. Supp. 126.

The judgment should be affirmed.

Judgment and order affirmed, with costs.   All concur, except HOOKER, J., who dissents.