## MISSOURI PAC. RY. CO. v. CASTLE.

(Circuit Court of Appeals, Eighth Circuit. August 9, 1909.)

### No. 2,995.

**1.** COMMERCE (§ 10*)—INTERSTATE RAILROADS—FELLOW SERVANTS—STATE STATUTES LIMITING DOCTRINE.

Laws Neb. 1907, p. 191, c. 48, § 1, which provides, inter alia, that railroad companies operating trains within the state shall be liable for injuries to employés resulting from the negligence of other employés, is comprehensive in its terms, and applies to railroads doing an interstate business, and governs the liability of such companies to employés operating trains engaged in interstate commerce in the absence of valid legislation by Congress covering such liability.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8; Dec. Dig. § 10.*]

**2.** CONSTITUTIONAL LAW (§§ 245, 249*)—EQUAL PROTECTION OF LAWS—STATUTES ESTABLISHING DOCTRINE OF COMPARATIVE NEGLIGENCE IN ACTIONS AGAINST RAILROADS.

Laws Neb. 1907, p. 192, c. 48, § 2, which provides for the application of the rule of comparative negligence in actions by employés against railroad companies for personal injuries, and also that "all questions of negligence and contributory negligence shall be for the jury," is within the constitutional power of the Legislature, and does not deprive the defendant in such cases of the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 702, 710; Dec. Dig. §§ 245, 249.*]

**3.** COURTS (§ 352*)—RECEPTION OF EVIDENCE—OFFER.

Under the rule of the federal courts, an offer to prove certain facts may be made without first propounding a question to a witness as a basis for such offer, and, if the offer is rejected, error may be assigned thereon where there is nothing to indicate that the offer was not made in good faith, or that the proof would not have been produced if permitted.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 352.*]

**4.** WITNESSES (§ 211*)—COMPETENCY—PRIVILEGED COMMUNICATIONS.

Where plaintiff's leg was crushed by being run over by a car of one of defendant's railroad trains, which facts were known and not in dispute, a statement made by plaintiff to defendant's physician who came to treat his injury as to the manner in which his foot came to be caught under the wheel was not a privileged communication within Civ. Code Neb. § 333 (Comp. St. Neb. 1901, § 5907), which prohibits a physician from disclosing "any confidential communication properly intrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office," having no relation to the treatment of the injury, and the exclusion of such statement when offered in evidence was error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 773; Dec. Dig. § 211.*]

In Error to the Circuit Court of the United States for the District of Nebraska.

James W. Orr (George G. Orr and B. P. Waggener, on the brief), for plaintiff in error.

T. J. Mahoney (J. A. C. Kennedy, on the brief), for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

. CARLAND, District Judge. Ozro Castle brought this suit against the Missouri Pacific Railway Company to recover damages for personal injuries received by him on October 2, 1907, while in the employ of the company at Auburn, Neb. It is alleged in the petition that said injuries resulted from the negligence of fellow servants. The plaintiff recovered a verdict, and the defendant has removed the case to this court by writ of error. It appeared at the trial that the train upon which plaintiff was employed at the time he was injured started October 1, 1907, from St. Joseph, Mo., for Auburn, Neb., via Atchison, Kan., and was engaged in interstate commerce. Plaintiff based his cause of action upon section 1, c. 48, p. 191, Laws Neb. 1907, which was in force on the date of the injury. Said section reads as follows:

"Section 1 (Railway Company's Liability to injured employé). That every railway company operating a railway engine, car, or train, in the state of Nebraska, shall be liable to any of its employés who at the time of the injury are engaged in construction or repair work, or in the use and operation of any engine, car, or train, for said company, or, in case of his death to his personal representatives for the benefit of his widow and children, if any, if none, then to his parents, if none, then to his next of kin dependent upon him, for all damages which may result from negligence of any of its officers, agents, or employés, or by reason of any defects or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, ways or works."

It is contended that said section does not include a railway company engaged in interstate commerce in the state of Nebraska, but the language of the section clearly includes all railroads operated in the state. It is also contended that the section above quoted is inoperative so far as employés of the defendant engaged in interstate commerce are concerned by reason of the act of Congress approved June 11, 1906 (Act June 11, 1906, c. 3073, 34 Stat. 232 [U. S. Comp. St. Supp. 1907, p. 891]). As this last named act was declared to be unconstitutional in Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, it must be considered as never having existed for any purpose. Therefore Congress had not legislated upon the subject contained in section 1 of the Nebraska law above quoted at the time that plaintiff received his injuries. In the absence of legislation by Congress, it was competent for the state to legislate. Chicago, Milwaukee, etc., Ry. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688.

It is further contended that section 2, c. 48, p. 192, Laws Neb. 1907, is repugnant to article 14 of the admendments to the Constitution of the United States, in that it abridges the privileges and immunities of a citizen of the United States, deprives the defendant company of its property without due process of law, and denies to it the equal protection of the laws. The section referred to reads as follows:

"Sec. 2 (Same; contributory negligence). That in all actions hereafter brought against any railway company to recover damages for personal injuries to any employé or when such injuries have resulted in his death, the fact that such employé may have been guilty of contributory negligence shall not bar a recovery when his contributory negligence was slight and that of the employer was gross in comparison but damages shall be diminished by the jury

in proportion to the amount of negligence attributable to such employé, all questions of negligence and contributory negligence shall be for the jury."

Conceding but not deciding that said section would be binding upon the federal courts sitting in Nebraska, it has no such effect as is claimed by defendant. In view of the history of trial by jury and the distribution of governmental powers by the Constitution of Nebraska, we cannot presume for a moment that the Legislature had reference to any questions except those of fact, when it used the language: "All questions of negligence and contributory negligence shall be for the jury." As thus interpreted the language quoted is simply declaratory of existing law. Kiley v. Chicago, M. & St. P. Ry. Co. (Wis. 1909) 119 N. W. 309.

It is only when in the opinion of the court there is no question of negligence or contributory negligence as a matter of fact that cases are taken from the jury, under existing practice. In so far as the statute creates the rule of comparative negligence, it in no wise tends to destroy any of the constitutional rights of defendant. The rule of comparative negligence was adopted by some courts of their own motion, and not until it was demonstrated that the rule is impracticable in cases tried to a jury was it discarded, as in theory it is a just rule and is continually enforced by the courts of admiralty, where the trained minds of judges are able to compare the faults of vessels in collision. It is not a question here, however, whether the rule ought to be adopted, but whether the Legislature of Nebraska had the power so to do. Of this we have no question. If the Legislature has the power to take away the defense that the injury sued for was committed by fellow servants, it certainly has the right to modify the rule that any negligence of a plaintiff directly contributing to his injury will defeat his recovery. Missouri Pacific Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Minneapolis & St. Louis Railway Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Tullis v. Railway Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; Chicago, K. & W. R. Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675; Peirce v. Van Dusen, 78 Fed. 693, 24 C. C. A. 280, 69 L. R. A. 705; Kiley v. Chicago, M. & St. P. Railway Co. (Wis.) 119 N. W. 309.

As the statute only acts prospectively, defendant cannot say that it takes away any vested right. The importance of the question as to whether section 2, above quoted, is binding upon the federal courts sitting in Nebraska, so far as the rule of comparative negligence is concerned, is largely minimized by section 2 of the act of Congress approved April 22, 1908 (Act April 22, 1908, c. 149, 35 Stat. 65), which establishes practically the same rule. At the trial the defendant called as a witness in its own behalf, Dr. W. H. Ramsey, who being examined in chief testified as follows:

"Q. What is your full name? A. W. H. Ramsey.

"Q. What is your profession? A. Physician and surgeon.

"Q. What position, if any, do you hold with the Missouri Pacific Railway Company? A. I am one of the surgeons.

"Q. Did you hold the same position in October of last year? A. Yes, sir.

"Q. Do you remember of an accident happening to Mr. Castle, the plaintiff in this case? A. Yes, sir.

"Q. Did you examine his injury? A. Yes, sir.

"Q. Describe to the jury in what manner he was injured.

"Mr. Mahoney: Before that question is answered, if your honor please, I desire to ask the witness a question or two in respect to his relation to the case, bearing upon his competency.

"By Mr. Mahoney:

"Q. Doctor, where did you examine him? A. At the hospital.

"Q. In Omaha? A. Yes, sir.

"Q. Did you treat him? A. He arrived in the evening, and, no; I hadn't treated him before that.

"Q. But did you examine him for the purpose of treating him? A. Yes, sir.

"Q. What examination you made was for that purpose? A. Yes, sir.

"Q. The examination you made was for the purpose of diagnosing the case to become informed so you could properly treat him? A. Yes. sir.

"Q. In the discharge of your duties as a surgeon? A. Yes, sir."

Upon objection of Mr. Mahoney, the above question and an offer made thereon was excluded, and, without asking any other question, counsel for defendant then made the following offer:

"Defendant also offers to prove by this witness that he had a conversation with the plaintiff in which the plaintiff told him that the injury was sustained by plaintiff by having his foot slip off the brakebeam and onto the 'T' rail of the track and one of the car wheels of the first car passing over his foot.

"Mr. Mahoney: That is objected to for the reason that it is incompetent, and for the reason that the witness is incompetent to testify respecting the information acquired by him under the circumstances which he has disclosed, such testimony being forbidden by statute, and the witness being made incompetent to testify thereto, for the further reason that there has been no foundation laid for the making of such an offer."

This objection was sustained by the court and the ruling excepted to by counsel for defendant. It is claimed that no error can be assigned here upon the above ruling of the court for the reason that no question was propounded by counsel upon which to base the offer and cases are cited in support of this contention, but we think the rule established in the federal courts is as stated by Chief Justice Waite in Scotland County v. Hill, 112 U. S. 186, 5 Sup. Ct. 95, 28 L. Ed. 692, as follows:

"It is claimed, however, that error cannot be assigned here on the exception to the exclusion of the oral proof, because the record does not show that any witness was actually called to the stand to give the evidence, or that any one was present who could be called for that purpose, if the court had decided in favor of admitting it, and we are referred to the cases of Robinson v. State, 1 Lea (Tenn.) 673, and Eschbach v. Hurtt, 47 Md. 61, 66, in support of that proposition. Those cases do undoubtedly hold that error cannot be assigned on such a ruling unless it appears that the offer was made in good faith, and this is in reality all they do decide. If the trial court has doubts about the good faith of an offer of testimony, it can insist on the production of the witness, and upon some attempt to make the proof before it rejects the offer; but, if it does reject it, and allows a bill of exceptions which shows that the offer was actually made and refused, and there is nothing else in the record to indicate bad faith, an appellate court must assume that the proof could have been made, and govern itself accordingly."

Under the above rule we must treat the offer as made in good faith, and presume that the testimony offered would have been produced if counsel had been permitted to do so. Whether or not counsel for defendant ought to have been permitted to show the facts contained in

his offer depends upon the true construction of section 333 of the Civil Code of Nebraska, which is as follows:

"No practicing attorney, counsellor, physician, surgeon, minister of the gospel, or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity. and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

The above section of the Civil Code of Nebraska was before this court in the case of Union Pacific Railway Co. v. Thomas, 152 Fed. 365, 81 C. C. A. 491. It was there said:

"The essential elements of a privileged or a confidential communication under the Nebraska statute are: (1) The relation of physician and patient; (2) information acquired during this relation; and (3) the necessity and propriety of the information to enable the physician to treat the patient skillfully in his professional capacity."

While the offer itself does not disclose that the statement was made to the witness under the same circumstances as the information sought by the previous question and offer which were excluded, in fairness, it will be so treated. The question then is narrowed down to this. Was the fact that plaintiff told the witness that he was injured by having his foot slip off the brake beam onto the "T" rail of the track and one of the car wheels of the first car passing over his foot a confidential communication properly intrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline.

It is obvious that the admissibility of evidence sought to be excluded under the statute, above quoted, must be determined by the facts in each case. In the Thomas Case above referred to the injuries were internal. From what particular disease the plaintiff was suffering, and what was the proximate cause thereof, was in doubt. Under such a state of facts answers to questions as to how the plaintiff was injured, and as to what physical injuries she received were clearly necessary to enable the physician to prescribe and hence, were privileged. In the case at bar there was beyond question a crushed right leg about four inches above the ankle. The injury beyond question was caused by one of the defendant's cars passing over plaintiff's leg. Whether the injury was caused by plaintiff's or defendant's negligence was the pivotal question in the case. It is impossible to imagine anything that Castle, the injured person, could say to the physician in reference to the cause of the injury that would in any way throw any light upon the manner of treating the same. How the leg came to be crushed was for the purpose of treatment absolutely immaterial. What plaintiff told the witness was of no assistance whatever to enable him to discharge the functions of his office.

The statute is in derogation of the common law, and often excludes the best evidence. It should not, therefore, be extended to matters of evidence not coming clearly within its provisions as the object and purpose of all trials is the development of the true facts in each case. We find no cases which under similar circumstances have held testimony such as was offered in the present case inadmissible, but, on the contrary, we find the following decisions which hold such evidence to

be admissible under similar or like statutes. Smith v. John L. Roper Lumber Co., 147 N. C. 62, 60 S. E. 717, 125 Am. St. Rep. 535; Linz v. Mass. Mut. Life Ins. Co., 8 Mo. App. 365; Green v. Terminal Railroad Association, 211 Mo. 18, 109 S. W. 715; Griebel v. Brooklyn Heights Railroad Co., 68 App. Div. 204, 74 N. Y. Supp. 126; Travis v. Hahn, 119 App. Div. 138, 103 N. Y. Supp. 973; Brown v. Rome, W. & O. R. Co., 45 Hun (N. Y.) 439; De Jong v. Erie Railroad Co., 43 App. Div. 427, 60 N. Y. Supp. 125; Kansas City, Fort Scott & Memphis Railway v. Murray, 55 Kan. 336, 40 Pac. 646; Collins v. Mack, 31 Ark. 684; Griffiths v. Metropolitan St. Railway Co., 171 N. Y. 106, 63 N. E. 808; Campau v. North, 39 Mich. 606, 33 Am. Rep. 433.

We think the court erred in sustaining the objection to the testimony offered, and for such error we reverse the judgment and grant a new trial; and it is so ordered.