## WOOD *v.* CITY OF DETROIT.

1. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION AS APPLIED TO MUNICIPAL CORPORATIONS—DUE PROCESS OF LAW.

    Act No. 10, Extra Session 1912, as amended, bringing all municipal corporations of the State within the provisions in the statute establishing workmen's compensation, is not in excess of the recognized powers of the legislature, which has been held in several cases arising in different States to have authority to abolish the common law defenses of contributory negligence and assumed risk and to abrogate the fellow-servant rule.

2. SAME—EQUAL PROTECTION OF THE LAW—CORPORATIONS.

    Nor is the statute unconstitutional because it affects municipal corporations differently from private corporations, in that private corporations are permitted to elect whether or not they shall become subject to the law, while municipal corporations have no option. The classification so

created is not invalid, and does not deprive a municipal corporation of the equal protection of the laws.

3. SAME—LOCAL SELF GOVERNMENT—MUNICIPAL CORPORATIONS.
Under the new Constitution the right of local self government granted to municipal corporations does not deprive the legislature of its authority to regulate such public instrumentalities by general enactments affecting their private governmental functions.

4. SAME—NEGLIGENCE—FEDERAL CONSTITUTION.
No constitutional right of the corporation is infringed because the statute compels the municipality to respond in damages to servants who may have been injured without fault of the employer: since the legislature has the power to determine on what terms municipal corporations shall be allowed to engage in the employment of labor, if at all, the collective and individual rights of the citizens being duly preserved.[1]

Certiorari to the Industrial Accident Board. Submitted January 14, 1915. (Docket No. 93.) Decided December 21, 1915.

Mary Wood presented her claim for compensation for the death of Henry H. Davenport while in the employ of the Public Lighting Commission of the city of Detroit. An order was entered awarding compensation. The city of Detroit brings certiorari. Affirmed.

*Louis H. Wolfe* and *Chester L. Schwartz* (*Maurice E. Fitz-Gerald* and *Samuel W. Shier*, of counsel), for claimant.

*William E. Tarsney* (*Richard I. Lawson*, of counsel), for defendant.

*Grant Fellows*, Attorney General, and *L. W. Carr*, Assistant Attorney General, *amici curiæ*.

[1]On the constitutionality of compulsory industrial insurance, see note in 37 L. R. A. (N. S.) 466.

OSTRANDER, J. In March, 1914, an employee of the Public Lighting Commission of the city of Detroit in the course of his employment was killed. The Industrial Accident Board affirmed an award to a member of the family of the deceased made under the provisions of Act No. 10, Pub. Acts 1912 (Extra Session), overruling the contention of the city that, as applied to municipal corporations, the act is void. The act is entitled:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the accidental injury to or death of employees and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act."

The propositions of plaintiff in certiorari are that the effect of the act, in operation, is to deprive it of its property without due process of law, the legislature being without power to compel it to respond in damages to an employee injured without its fault; that by the terms and operation of the law, and in respect to its private and proprietary functions and powers, its rights and the similar rights of individuals and of private corporations are not equally protected. It is also contended that in the home rule act the legislature exhausted its powers and may not by the act in question affect municipal affairs as it has assumed to do. On the other hand, the claimant, the defendant in certiorari, presents points which are stated in the brief as follows:

"(1) That Act No. 10, Public Acts 1912, Extra Session, is constitutional and is within the police power of the State; and that the State has absolute control of municipalities.

"(2) That the legislature in passing Act No. 279 in 1909, known as the home rule bill, did not relinquish its control or its further guidance or restrictive powers as to municipalities; that the provision in the Constitution, made in 1908, in which it is stated that the legislature shall provide a general law for the incorporation of cities and villages with reference to the rate of taxation for municipal purposes and restricting their powers to borrow money and contracting debts, did not prevent the legislature from passing a law such as Act No. 10, Public Acts 1912, Extra Session.

"(3) The appellee contends that municipalities, such as cities, villages, towns, townships, and counties are not discriminated against in Act No. 10 of the Public Acts 1912, Extra Session; that the legislature did not exceed its authority in passing a measure which compels an employer (municipality) to pay money to an employee who is injured while within the scope of his employment, whether or not the employer (municipality) is negligent in any degree."

A workmen's compensation act has been held to be invalid, because compulsory, in *Ives* v. *Railway Co.*, 201 N. Y. 271 (94 N. E. 431, 34 L. R. A. [N. S.] 162, Am. & Eng. Ann. Cas. 1912B, 156), and valid, though compulsory, in *State, ex rel. Davis-Smith Co.*, v. *Clausen*, 65 Wash. 156 (117 Pac. 1101, 37 L. R. A. [N. S.] 466). The New York decision was made in March, 1911. In November, 1913, the constitution of New York was amended (article 1, § 19), and it has since been held (*Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514 [109 N. E. 600]) that the constitutional amendment meets the objections suggested by the court and sustains the present act, which differs essentially from the one considered in the *Ives Case*. See, also, *State, ex rel. Yaple*, v. *Creamer*, 85 Ohio St. 349 (97 N. E. 602, 39 L. R. A. [N. S.] 694), and *Porter* v. *Hopkins*, 91 Ohio St. 74 (109 N. E. 629). The broad question discussed in the cases referred to is not before us. The questions here are whether the legislature may

impose the obligation upon a municipal corporation, and, if it may, then whether the act discriminates, unlawfully, between such corporations and others affected by the act.

It is well to inquire what will be the effect of the law in application to actual affairs, and especially in what way, if in any, it affects, differently, municipal corporations and private corporations and individuals.

Excepting employers of domestic and farm labor, the act abolishes certain defenses in actions for personal injuries as to all employers, in all cases except cases where an employee gives notice that he will not be bound by the act. These defenses are available to an individual or a private corporation in a suit brought by an employee who has so given notice. In no case are they available to a municipal corporation, because its employees are in any event, in express terms, bound by the act. The defenses referred to are: (1) That the employee was negligent, unless wilfully so; (2) that the injury was caused by the negligence of a fellow servant; (3) that the employee had assumed the risks inherent in, incidental to, or arising out of his employment, or arising from failure of the employer to provide and maintain safe premises and suitable appliances.

Probably no one will now deny the power of the legislature to abolish these defenses. See *Opinion of Justices,* 209 Mass. 607 (96 N. E. 308); *Ives* v. *Railway Co.,* 201 N. Y. 271 (94 N. S. 431, 34 L. R. A. [N. S.] 162, Am. & Eng. Ann. Cas. 1912B, 156); *Quackenbush* v. *Railroad Co.,* 62 Wis. 411 (22 N. W. 519); *Id.,* 71 Wis. 472 (37 N. W. 834); *Employers' Liability Cases,* 207 U. S. 463 (28 Sup. Ct. 141); *Kiley* v. *Railway Co.,* 138 Wis. 215 (119 N. W. 309, 120 N. W. 756); *Wilmington Star Mining Co.* v. *Fulton,* 205 U. S. 60 (27 Sup. Ct. 412); *Minnesota Iron Co.* v. *Kline,* 199 U. S. 593 (26 Sup. Ct. 159);

*Hall* v. *Mill Co.*, 39 Wash. 447 (81 Pac. 915, 4 Am. & Eng. Ann. Cas. 587) ; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1 (25 Sup. Ct. 158) ; *Walker* v. *Railroad Co.*, 135 N. C. 738 (47 S. E. 675) ; *Mott* v. *Railway Co.*, 131 N. C. 234 (42 S. E. 601) ; *Cogdell* v. *Railway Co.*, 129 N. C. 398 (40 S. E. 202) ; *Thomas* v. *Railroad Co.*, 129 N. C. 392 (40 S. E. 201) ; *Carterville Coal Co.* v. *Abbott*, 181 Ill. 495 (55 N. E. 131) ; *Odin Coal Co.* v. *Denman*, 185 Ill. 413 (57 N. E. 192, 76 Am. St. Rep. 45) ; *D. H. Davis Coal Co.* v. *Polland*, 27 Ind. App. 697 (60 N. E. 1124) ; *Island Coal Co.* v. *Swaggerty*, 159 Ind. 664 (62 N. E. 1103, 65 N. E. 1026) ; *United States Cement Co.* v. *Cooper* (Ind. App.), 82 N. E. 981; *Hailey* v. *Railway Co.*, 113 La. 533 (37 South. 131) ; *Kilpatrick* v. *Railway Co.*, 74 Vt. 288 (52 Atl. 531, 93 Am. St. Rep. 887) ; *Johnson* v. *Coal Co.*, 88 Ark. 243 (114 S. W. 722, 123 S. W. 1180, 19 L. R. A. [N. S.] 646) ; *Coley* v. *Railroad Co.*, 129 N. C. 407 (40 S. E. 195, 57 L. R. A. 817) ; *Lore* v. *Manufacturing Co.*, 160 Mo. 608 (61 S. W. 678) ; *Mobile, etc., R. Co.* v. *Turnipseed*, 219 U. S. 35 (31 Sup. Ct. 136, 32 L. R. A. [N. S.] 226, Am. & Eng. Ann. Cas. 1912A, 463) ; *Ditberner* v. *Railway Co.*, 47 Wis. 138 (2 N. W. 69) ; *Missouri Pacific R. Co.* v. *Haley*, 25 Kan. 35; *Missouri Pacific R. Co.* v. *Mackey*, 33 Kan. 298 (6 Pac. 291) ; *Bucklew* v. *Railway Co.*, 64 Iowa, 603 (21 N. W. 103) ; *McAunich* v. *Railroad Co.*, 20 Iowa, 338; *Vindicator, etc., Mining Co.* v. *Firstbrook*, 36 Colo. 498 (86 Pac. 313, 10 Am. & Eng. Ann. Cas. 1108) ; *Deppe* v. *Railroad Co.*, 36 Iowa, 52; *Peirce* v. *Van Dusen*, 78 Fed. 693 (24 C. C. A. 280, 69 L. R. A. 705) ; *Campbell* v. *Cook*, 86 Tex. 630 (26 S. W. 486, 40 Am. St. Rep. 878) ; *Thompson* v. *Railroad & Banking Co.*, 54 Ga. 509; *Georgia Railroad* v. *Ivey*, 73 Ga. 499; *Missouri Pacific R. Co.* v. *Castle*, 172 Fed. 841 (97 C. C. A. 124) ; *Missouri Pacific R. Co.* v. *Mackey*, 127 U. S. 205 (8 Sup. Ct. 1161).

But abolishing these defenses, except as against an employee who refuses to be bound by the act, is not the sole, nor main, purpose of the act. Obviously, it is an inducement, somewhat coercive in character, for accomplishing what the legislature regarded as a desirable result. With the particular defenses abolished, there would still be actions in which the liability of the employer would be debatable, and many injuries of employees are attributable to pure accident. The individual and the private corporation employing labor, and refusing to be bound by the act, may elect to contest, though with limited defenses, liability for injuries; municipal corporations may not. In this respect, only, the act affects, differently, municipal corporations and other corporation and individual employers of labor. It expressly provides that "the State, and each county, city, township, incorporated village and school district therein, and each incorporated public board or public commission in this State authorized by law to hold property and to sue or be sued generally" shall constitute employers subject to the provisions of this act. Act No. 50, Pub. Acts 1913. And no distinction is suggested between employment in work heretofore classified as governmental in character, or involving the exercise on the part of the corporation of governmental power, and employment in work heretofore classified as private in character.

As to the first question presented, namely, the power of the legislature to impose upon municipal corporations the duties and liabilities created by the act, I think there would have been, under our former Constitutions, no reasonable doubt. So long as it was admitted (*People* v. *Hurlbut*, 24 Mich. 44 [9 Am. Rep. 103]; *Board of Park Commissioners* v. *Common Council of Detroit*, 28 Mich. 228), that the State, through the legislature, must determine for each of its municipal corporations the powers it should exercise and the

capacities it should possess, and that it must also decide what restrictions should be placed upon them, "as well to prevent clashing of action and interest in the State as to protect individual corporators against injustice and oppression at the hands of the local majority," it followed that municipal activity in the employment of labor, if permitted at all, might be permitted only upon compliance with such conditions as are found in the act here considered. In *Atkin* v. *Kansas*, 191 U. S. 207 (24 Sup. Ct. 124), there was involved the validity, with respect to the Fourteenth Amendment to the Constitution of the United States, of a statute of Kansas which, after fixing eight hours as a day's work for all laborers employed by or on behalf of the State, or any of its municipalities, made it unlawful for any one contracting to do any public work to require or permit any laborer to work longer than eight hours per day, and required contractors to pay the current rate of daily wages, which it appeared were fixed, as to private work, upon ten hours' daily labor. A contractor was convicted and sentenced for disobedience of the act. In the opinion of the court, it is said, among other things:

" 'If a statute,' counsel observes, 'such as the one under consideration is justifiable, should it not apply to all persons and to all vocations whatsoever? Why should such a law be ₁limited to contractors with the State and its municipalities? * * * Why should the law allow a contractor to agree with a laborer to shovel dirt for ten hours a day in performance of a private contract, and make exactly the same act under similar conditions a misdemeanor when done in the performance of a contract for the construction of a public improvement? Why is the liberty with reference to contracting restricted in the one case and not in the other?'

"These questions—indeed, the entire argument of defendant's counsel—seem to attach too little consequence to the relation existing between a State and its municipal corporations. Such corporations are the

creatures, mere political subdivisions, of the State for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the State. They are, in every essential sense, only auxiliaries of the State for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged, or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed."

But it is argued, in effect at least, and the point is self-intruding into any discussion of the subject, that the Constitution of 1909 has taken from the legislature the power to grant or refuse to municipal corporations the exercise of certain powers and the possession of certain capacities, and so has denied the power of the legislature to restrict and control provident and necessary action of municipalities in exercising powers which the Constitution itself has given to them. In other words, the so-called private capacities of municipal corporations enumerated in the Constitution may be employed precisely as like capacities and activities of private corporations may be employed in so far as legislative control is concerned.

In a recent case, in considering the right of a city while operating its electric light plant and supplying its inhabitants with current to also in that connection do electrical wiring on private premises and furnish fixtures and other accessories essential and convenient in using electricity, and sustaining the right, we said:

"The old law of municipal trading, involving the propriety and expediency of authorizing a municipality to engage in general business in competition with its citizens conducting a private business of like kind, has

little bearing here; but the rule remains that taxation can only be for public purposes and municipalities have no express or implied power to engage generally in private business. We are past ʻthe general question of the validity of legislation authorizing municipal ownership and operation of plants and their necessary equipment to furnish the concentrated population of cities with certain general needs and conveniences, like water, light, heat, transportation, telephone service, etc.; and it is held that the court will not interfere with any reasonable exercise of the implied powers to operate such plants in a business way, and as any private corporation could or would." *Andrews* v. *City of South Haven,* 187 Mich. 294 (153 N. W. 827).

The Constitution of 1909 contains the following (article 8) :

"Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Sec. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State.

"Sec. 22. Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health or safety.

"Sec. 23. Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof; and may also sell and deliver water, heat, power and light without its corporate limits to an amount not to exceed twenty-five per cent. of that furnished by it within the corporate limits; and may operate transportation lines without the municipality

within such limits as may be prescribed by law: *Provided,* that the right to own or operate transportation facilities shall not extend to any city or village of less than twenty-five thousand inhabitants.

"Sec. 24. When a city or village is authorized to acquire or operate any public utility, it may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law: *Provided,* that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such city or village, but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

The general law passed pursuant to the constitutional provision is Act No. 279, Pub. Acts 1909, amended in some respects by Act No. 203, Pub. Acts 1911, and by Act No. 5, Pub. Acts 1913. Of this legislation is may be said, generally, that it recognizes and provides for the exercise of the right of cities to acquire and control property in accordance with their charters, which they may make, revise, or amend within certain limitations. Among other things, the charters may provide:

"(*i*) For the purchase of the franchises, if any exist, and of property used in the operation of companies or individuals engaged in the plank road, cemetery, hospital, almshouse, electric light, gas, heat, water and power business; and in cities having not less than twenty-five thousand inhabitants the purchase of the franchise, if any, and the property of street railway and tram railway companies, State and county taxes shall be paid upon such transportation property so purchased and owned by any such city."

"(*s*) For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not;

for any act to advance the interest of the city, the good government and prosperity of the municipality and its inhabitants, and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

The city of Detroit, the plaintiff in certiorari, exists under a special charter, being of the class referred to in section 2 of the act as follows:

"Each city now existing shall continue with all its present rights and powers until otherwise provided by law."

It has, however, as is matter of common knowledge, amended its charter in various respects, not here of importance. It possessed, before the Constitution was adopted, various powers relating to the acquisition, ownership, and control of property, and still possesses these powers and in their exercise has acquired and owns property, real and personal, which is operated by the city. In the management and control of this property and in the exercise of powers concerning streets and public places, it employs and pays many men.

Counsel for plaintiff in certiorari say:

"If the municipality in its private business capacity is a private corporation, it is then entitled to the same right of election as every other private corporation; and if this act is compulsory in its features as applied to the municipality, it then compels the municipality to pay its injured employees, and results in the taking away of the municipality's property (its money) without due process of law, for the reason that by due process of law is meant the right to have laws operate on all alike, not subjecting the individuals to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice."

The Constitution of 1909 has pointed out the extent of the local powers and capacities of cities and villages with more precision than was done in former Consti-

tutions, thus restricting the power of the legislature to grant or to deny to particular communities the enumerated capacities and powers, at will, but it has not abolished all distinctions between municipal and other corporations and individuals with respect to the exercise of the powers conferred nor denied the power of the legislature to enact general laws applicable to cities. The distinction between powers governmental in character and those private in character, as exercised by municipal corporations, does not involve the abrogation of the distinction between private municipal activity and private individual activity. To employ a seeming paradox, private municipal activities are all of them public. What has been called private in municipal activity is, nevertheless, public when contrasted with purely private enterprise and adventure.

There remains, and always must remain, the distinction pointed out in the opinion last referred to. The actual basis for the carrying on by municipal corporations of private municipal business is taxation. There is not, and there cannot be, any merely local power to tax persons or property, and municipal activity may still be, and it is the command of the Constitution that it shall be, restricted, limited, by the limitation of the power to tax, to borrow money and to exploit the municipal credit. Moreover, municipal corporations are still State agencies, and as such subject to legislative direction and control, none the less so because the exercise of such control may indirectly affect a private municipal activity. The act, in its application to municipalities, involves no right of local self-government, or local control and management of corporate property. It deprives the municipality of none of its property, because, in effect, it is made lawful to raise by tax the money required to pay all injured employees some compensation. A new public purpose for which taxes may be levied is declared.

The subject of the legislation which is in question here is a social subject, in its very nature referable for community action to the State itself. A social theory needed to be crystallized into law. Its nature was such that no community less than the State could be appealed to for this purpose. The theory of this and of similar legislation includes the essential idea that the industrial worker is himself a social asset and ought not, in any case, to bear the whole result of a personal injury arising out of and in the course of his employment; that society at large ought to share the loss. The subject is one of governmental control, of public policy, necessarily committed to the legislature. Whether it is or is not denominated a police regulation, municipal corporations are, for the purpose of carrying out such a measure, subject to legislative control. The first question is therefore answered adversely to the plaintiff in certiorari.

The second question, namely, whether the classification of employers as municipal and other can be defended, is, in principle, answered by what has been already said. The legislature was confronted with the duty to devise a plan, complete in itself, for dealing with the subject and accomplishing the desired purpose. The limitation upon its power in this direction is the Constitution, which I think it has not contravened. The burden created, if it can be called a burden, is uniform as to each individual of each class. There is no vested right of any person to labor for a municipal corporation.

There is also a consideration of expediency which may have influenced the legislature. Private corporations and individuals exploit private capital. Out of this, in the first instance, the compensation of employees must be paid. The burden thus assumed by the employer must be distributed by his action in the course of his business. In the case of a municipal cor-

poration the burden assumed by it as employer is distributed, immediately and finally, upon the community subject to be taxed to raise the necessary fund. However that may be, there is found in the imposition of the law upon municipal corporations no invasion of private rights, but only the enforcement of a State policy which, in view of municipal activities, ought to be uniformly accepted and observed by all municipal corporations.

The order of the Industrial Accident Board is affirmed.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.